## SARAH P. WORKMAN *vs.* CITY OF WORCESTER.

Worcester.    Oct. 7, 8, 1874. — Sept. 6, 1875.    COLT & MORTON, JJ., absent.

A statute, which by its terms is to be void unless accepted by the voters of a city within a year from its passage, and which by force of the Gen. Sts. *c.* 3, § 6, takes effect on the thirtieth day next after the day on which it is approved by the governor, may be accepted before the expiration of thirty days.

Under the St. of 1867, *c.* 106, empowering the city council of Worcester to lay, make and maintain drains and sewers in that city, the mayor and aldermen ordered the sum of $450,000 assessed upon the persons whose estates were benefited by such drains and sewers. The amount actually assessed was $450,001. *Held,* that the excess was immaterial.

At the trial before a jury of a petition brought by a person aggrieved by an assessment made under the St. of 1867, *c.* 106, § 4, which authorizes the mayor and aldermen of Worcester to assess his proportionate share of the expenditure of the city for drains and sewers, upon every person owning real estate upon any street in which any drain or sewer may be laid under the act, and upon the line thereof, " or whose real estate may be benefited thereby," and gives the right to any person aggrieved by the doings of the mayor and aldermen to apply for a jury in the manner provided in the Gen. Sts. *c.* 48, § 6, it appeared that the petitioner's land was on the line of E. Street, and that his private drain originally entered into the E. Street sewer, which discharged through M. Street and F. Street sewers into a brook; that the city under the St. of 1867, laid out the brook as a sewer, widening and deepening it, that before the new sewer was made the sewers in M. Street and F. Street were sometimes choked up and the cellars in these streets flooded, and that this evil was cured by the change in the brook. The petitioner requested the judge to rule that upon the whole evidence the petitioner's estate was not benefited under the statute. The judge refused so to rule, and did rule that the petitioner's estate received a legal benefit by the sewer built under the statute. The petitioner then claimed the right to go to the jury on the question of abatement, and to have the jury consider in assessing a tax what benefit the petitioner's estate had received; at the same time admitting that the petitioner's land had been fairly and justly valued relatively to other estates assessed, and that the tax assessed upon his estate was proportionate when considered as an assessment on the value of his estate in comparison with other estates assessed. The judge refused to allow the petitioner to go to the jury on this proposition and directed a verdict for the respondent. *Held,* that the petitioner had no ground of exception.

PETITION on the St. of 1867, *c.* 106, § 4,* for a jury, the petitioner alleging that she had been aggrieved by the doings of the mayor and aldermen of the city of Worcester in the assessment upon her of a sewer tax, which the respondent justified as laid under that statute. Trial in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions in substance as follows :

The voters of the city voted to accept the St. of 1867, *c.* 106, on April 16, 1867. On January 19, 1872, the board of mayor and aldermen passed the following order : " That the sum of four hundred and fifty thousand dollars be assessed upon the persons and estates benefited, together with such sums as the mayor and aldermen may determine as entrance fees." On May 30, 1872, the petitioner's estate was assessed the sum of $437.75, as the proportionate part of the expenditure incurred by the city in constructing sewers under the St. of 1867, the petitioner's estate being adjudged by the mayor and aldermen to be benefited thereby.

The valuation of the estates assessed for this tax amounted on the general valuation lists, made by the city assessor in 1871, to $9,000,000. The estates for the purpose of this sewer assessment were divided into sixteen classes, and the sum of $450,001 was the whole amount of this tax assessed on the sixteen classes ; the whol amount of the expenditure for sewers up to the time this tax was laid, was between $1,100,000 and $1,200,000. Mill Brook Sewer had been built at a cost of about $468,000 ; and the sixteen different classes were assessed at varying percentages on their several valuations, the percentage of tax in the petitioner's class being 4¼ per cent. The petitioner was served with notice of this assessment on May 31, 1872.

A sewer was made on Front Street in 1851, one on Main Street in 1855, and one on Elm Street in 1860.

The petitioner's house was on Elm Street, and no new sewer had been built on Elm Street, nor on any street adjoining the petitioner's land, or on her land, under the act of 1867 ; the petitioner could not drain from her land into any of the new sewers,

* The provisions of this statute are printed in a note to *Butler* v. *Worcester*, 112 Mass. 542.

except as the further facts in the case show. Since the laying of the Elm Street sewer in 1860, there was no alteration or change in the construction or manner of using the three old sewers in Front, Main, and Elm streets before 1867, and after that date only as the facts hereafter recited show connections to have been made with those in Main and Front streets, no change having been made in the Elm Street sewer up to the time of the trial. The Elm, Main, and Front Street old sewers formed a continuous and connecting line of sewers, from the times of their construction, and, since they were built as above, there have been no ordinances, votes, orders or decrees whatsoever passed by the city government or either branch thereof in relation to either of these three old sewers individually, or as a continuous line of sewers. The Front Street sewer emptied into Mill Brook, and had done so from the time of its construction, and it emptied at the time of the assessment at the same point into the new channel of Mill Brook. The petitioner entered her particular drain into the Elm Street Sewer, in 1864–65 or 1866, obtaining permission of the then mayor to do so ; and she offered to pay for the same, but was told by the mayor, " No matter — let that go for the present."

The new Mill Brook sewer was built under decrees of the city council after the passage of the St. of 1867, and the vote of the city April 16, 1867, and prior to this assessment and after adjudication that its construction was necessary for purposes of sewerage, drainage and the public health. In this construction Mill Brook has been straightened, altered, deepened, paved and walled for over two miles, and for a considerable distance both above and below Front Street, has been arched over and covered in ; and, at the point where the Front Street sewer has always entered Mill Brook, the bottom of the new Mill Brook sewer is some five feet lower than the bed of the old brook.

The respondent called the former city engineer, who had had charge of most of the work on the new sewers, and he testified that in very high water the water of Mill Brook used sometimes to back up into the Front Street sewer; that in storms he had known Main Street and Front Street cellars to be flooded to some extent by the sewers aforesaid in those streets, both before and after the construction of any of the new sewers under the St. of

1867, on account of being too small to carry off storm water; that he never knew any such flooding in Elm Street; that from the corner of Main and Elm streets to the petitioner's house was five hundred and thirty-four feet, and the elevation at the point where the petitioner's drain enters the Elm Street sewer was thirty-five to forty feet; that since 1867 new sewers have been built in Mechanic Street and in Foster Street, from Main Street to Mill Brook new sewer, that in Mechanic Street being connected in Main Street with the old Main Street sewer, and both tending to relieve the old Main Street and Front Street sewers from the former difficulty from storm water, and that since the construction of the said Mechanic Street and Foster Street sewers he never had known of complaint from flooding; that in the construction of sewers since 1867, several of the new sewers had been turned into the Main and Front Street old sewers, some of them before the Mechanic and Foster Street sewers were built, but they were all south of Elm Street, and made their junction with the old line of sewers lower down than the junction of Elm and Main streets. This testimony was not controverted by the petitioner.

The petitioner's counsel asked the judge to rule that on this evidence the petitioner was not benefited by the city's construction of sewers, and that her estate did not come into any class upon which the sewer assessment was authorized by the statute, and to direct a verdict accordingly. This request the judge refused.

The petitioner then introduced the testimony of several witnesses to the effect that her estate had received no actual and special benefit not common to all estates having access indirectly to Mill Brook, by the construction of sewers under the St. of 1867; but it was agreed by and between the parties that the petitioner's estate did not receive any actual and special benefit by the construction of the Mill Brook sewer and other sewers constructed under the St. of 1867, *c.* 106, which was not common to all estates having an access and right, by means of drains, to enter sewers communicating more or less directly with Mill Brook sewer.

The petitioner then asked the judge to rule as follows:

"1. That the St. of 1867, *c.* 106, was never legally accepted by the city of Worcester, and that this assessment was conse-

quently void. 2. That under the vote of the mayor and aldermen to assess $450,000, if the said vote is legal, the assessment of a greater sum rendered the whole assessment void. 3. That upon the whole evidence, the petitioner's estate was not benefited by the construction of sewers under the St. of 1867, in any manner or in any such manner as to bring it within any class of estates liable to taxation under that statute." The judge refused so to rule, and ruled that the assessment was valid, and that the petitioner's estate received a legal benefit by the sewer built under the St. of 1867, which rendered her liable to the assessment complained of. Whereupon the petitioner's counsel claimed the right to go to the jury on the question of abatement, and to have the jury consider in assessing the tax what benefit the petitioner's estate had received ; at the same time admitting that the petitioner's estate had been fairly and justly valued by the assessors, relatively to other estates assessed, that the tax assessed upon her estate was proportionate when considered as an assessment on the value of her real estate, in comparison with other estates assessed, and that in that view the tax was not inequitable or disproportionate.

The judge did not allow the petitioner to go to the jury on this proposition, in view of the foregoing admissions considered in connection with the request, and there being no other objections made to the assessment, directed a verdict for the respondent with damages for the full amount of the tax claimed, with interest at seven per cent. from the date when the tax was by the order made payable. The petitioner alleged exceptions.

*T. L. Nelson & W. S. B. Hopkins,* (*G. H. Ball* with them,) for the petitioner. 1. The St. of 1867, *c.* 106, was never legally accepted by the city. There is no special provision in the act as to the time when it, or any part of it, shall take effect, and it therefore went into operation on the thirtieth day next after the day on which it was approved by the governor. Gen. Sts. *c.* 3, § 6. See *Opinion of Justices,* 3 Gray, 607 ; *Kennedy* v. *Palmer,* 6 Gray, 316.

The act in question was approved March 29, 1867, and the vote of the city was taken April 16, 1867 ; so that the city could at that time only vote to accept what did not exist. The meetings at which the vote of the city was to be taken were unauthor

ized, except by the act. No persons were authorized to call the ward meetings, except under that act. The act could not authorize anything, for it had no life itself. The provision for a vote of acceptance by the city within one year from the passage of the act was a provision for such vote of acceptance after the expiration of thirty days, and within one year, that is, during the last eleven months of the year.

2. The assessment of more than $450,000 renders the whole assessment void, and the doctrine *de minimis non curat lex* does not apply. *Chenery* v. *Stevens*, 97 Mass. 77. *Pickett* v. *Breckenridge*, 22 Pick. 297.

3. The petitioner's third request should have been granted. Her estate is not benefited by the sewers constructed under the St. of 1867, *c.* 106, within the meaning of § 4. The act provides for assessing two classes of estates. First : Estates upon streets in which drains or sewers are laid, and upon the line of the sewers. Second : Estates which can be drained into the sewers, and thereby derive benefit. *Downer* v. *Boston*, 7 Cush. 277. *Wright* v. *Boston*, 9 Cush. 233. *Springfield* v. *Gay*, 12 Allen, 612. The benefit referred to in the St. of 1867 is the same benefit referred to in Gen. Sts. *c.* 48, § 4, construed in the first two cases above cited. It is part of the same system of legislation, and applies to the same subject matter. It is not to be supposed that the Legislature intended to leave the question whether an estate is liable to assessment to be determined by consideration of remote and conjectural benefits resting in the opinions of witnesses, or to make the board of aldermen the sole judges of the fact of benefit. The Legislature intended to designate distinct classes of estates, to be determined by simple rules, so that both the city and the citizens could readily see what estates were liable to be assessed. The rule contended for by the city would lead to great uncertainty and injustice.

4. If the position taken above is incorrect, and the court was right in refusing to rule that the petitioner's estate was not within a class defined by the statute, then the benefit, on account of which her estate was to be assessed, must be a benefit peculiar to her estate, and not one enjoyed in common by all estates in an increase of value, arising from the fact that the city was newly drained by a thorough system of sewerage. The question whether

the petitioner's estate was one of those peculiarly benefited to any extent, and therefore liable to assessment, was a question for the jury. In the case of the Springfield sewers, built under the St. of 1863, *c.* 107, peculiar provisions were made, the machinery being more complicated than in the Worcester sewer act; but in both acts, whether an estate not on a street or line of sewers was benefited by being drained was open, and in both cases it was to be submitted to a jury. In the Worcester act, the question of the proportionate assessment is submitted to the same jury. In the Springfield act, that question was reserved for the county commissioners. The opinion in the case of *Springfield* v. *Gay*, 12 Allen, 612, in saying that in the assessment of a sewer tax the commissioners cannot go into the benefits conferred on the estate, is based on the very fact that that subject has been open before to the decision by a jury. In the Worcester act, one single jury, to review the " doings " of the city, absorbed the functions of the commissioners. The jury then should have been allowed to find the fact whether there had been any actual benefit to the petitioner's estate, as before defined herein. The facts show that the petitioner could not drain into any new sewer, and that the land was not drained by any new sewer. The judge ruled, in substance, that although the sewage of the petitioner's estate found its way into a sewer built and maintained by the city, which had in no manner, however slight, been altered for five or six years before 1867, and thence through two still older sewers, built and maintained by the city, and emptied at the same place into a stream of water, inasmuch as that stream had been straightened, deepened and covered in, as matter of law, there was some peculiar benefit to the petitioner's estate, and that of such character as to make it assessable. If this position be law, and if a benefit so remote makes an estate liable to assessment, it must be the right of the landowner to have the extent of the benefit taken into consideration in the assessment upon him. It is not an answer to say, in the language of Chief Justice Bigelow, in *Springfield* v. *Gay, supra,* " It would be difficult, if not impracticable, to make an assessment which would operate fairly and equally, based on an estimate of the benefits which each estate might derive from the construction of the sewer. These benefits would naturally be conjectural, and difficult of estimation.

If a judge is able to pronounce as matter of law that such remote and conjectural benefit renders an estate liable, the estimation of that benefit cannot be so difficult as to deprive the landowner of finding it out by the verdict of a jury. The law will not inflict the citizen with a burden for a cause so conjectural and uncertain that its extent defies estimation. The petitioner, then, after the other rulings, had a right to go to the jury on the question whether her estate had been proportionately assessed, and in that inquiry to have had the benefit, which the court ruled she had received, taken into consideration by the jury. It appears on the facts that the Front Street sewer was never connected with the Mill Brook new sewer by any order or decree of the city government.

*G. F. Verry,* (*W. A. Williams* with him,) for the respondent.

GRAY, C. J. 1. By virtue of the Gen. Sts. *c.* 3, § 6, the St. of 1867, *c.* 106, like all other statutes of the Commonwealth, took effect on the thirtieth day after the day of its passage, unless and except so far as a different time was prescribed in the act itself. By § 6 of the St. of 1867, the act was to be void unless approved by a majority of voters at ward meetings " within one year from the passage of this act." Such acceptance might therefore be at any time after the passage of the act, even before the expiration of the thirty days. *Johnson* v. *Fay,* 16 Gray, 144. *Commonwealth* v. *Bennett,* 108 Mass. 27. The act therefore, having been duly accepted at meetings held on the eighteenth day after its passage, took effect under the general law on the thirtieth day.

2. The excess of a single dollar in the amount actually assessed, over the four hundred and fifty thousand dollars previously determined by the mayor and aldermen as the amount to be assessed, is too trifling a variation to affect the validity of the assessment. A case can hardly be imagined which would more imperatively call for the application of the maxim *de minimis non curat lex.*

3. The St. of 1867, *c.* 106, § 4, authorizes the mayor and aldermen to assess a proportionate share of the expenditure for drains and sewers under this act, not only upon every person owning real estate upon any street in which any drain or sewer may be laid under or by virtue of this act and upon the line thereof, but also upon every person " whose real estate may be benefited thereby."

It appears, by the facts proved at the trial and not controverted, that the plaintiff's estate is on the line of Elm Street, and that her private drain originally entered into the Elm Street sewer, which discharged through the Main Street and Front Street sewers into Mill Brook; that before the construction of the Mill Brook sewer, the sewers in Main Street and Front Street were sometimes choked up and the cellars in those streets flooded; and that this evil was cured by the construction of the Mill Brook sewer and of other sewers connected therewith under the St. of 1867; the bottom of the new Mill Brook sewer being five feet lower than the bottom of the old brook at the entrance therein of the Front Street sewer.

The Mill Brook sewer, constructed under the St. of 1867, having been substituted for Mill Brook in its natural condition, and the plaintiff now discharging her private drain through the connected line of sewers into Mill Brook sewer, the presiding judge rightly refused to rule as matter of law, as requested by the petitioner, that upon the whole evidence her estate was not benefited by the construction of sewers under the St. of 1867 in any such manner as to bring it within any class of estates liable to taxation under that statute. *Butler* v. *Worcester*, 112 Mass. 541. *Soady* v. *Wilson*, 3 A. & E. 248; *S. C.* 4 Nev. & Man. 777. *St. Katharine Dock* v. *Higgs*, 10 Q. B. 641.

His further ruling that the petitioner's estate received a legal benefit from the construction of the sewers under the St. of 1867, which rendered her liable to the assessment complained of, can only be considered by this court as applied to the petitioner's request, which was for a ruling that she was not benefited as matter of law, not that the question whether she was or was not benefited should be submitted to the jury.

4. The only other position asserted by the petitioner at the trial was "the right to go to the jury on the question of abatement, and to have the jury consider, in assessing the tax, what benefit the petitioner's estate had received; at the same time admitting that the petitioner's estate had been fairly and justly valued by the assessors, relatively to other estates assessed, that the tax assessed upon her estate was proportionate when considered as an assessment on the value of her real estate, in comparison with other estates assessed, and that in that view the tax was not inequitable or disproportionate."

We are of opinion that the refusal of the presiding judge to allow the petitioner " to go to the jury upon this proposition in view of the foregoing admissions considered in connection with the request, and there being no other objections made to the assessment," affords the petitioner no ground of exception.

This is not like a case under the betterment laws, in which the amount of the benefit to each estate is to be ascertained, and is capable of exact estimation without regard to other estates. It is more analogous to the case of ordinary taxes, in which all the estates belonging to the class liable to assessment are to be assessed in proportion to their just value. *Downer* v. *Boston*, 7 Cush. 277. *Wright* v. *Boston*, 9 Cush. 233. Com. Dig. Sewers E. 5.

As already observed, the estates to be assessed under the St. of 1867, *c.* 106, § 4, include all estates upon the line of any street in which any drain or sewer is laid, as well as all other estates which may be benefited thereby. To ascertain the exact degree of benefit conferred upon each particular estate would be very difficult, if not impracticable. The more reasonable and the usual rule in cases of this description is to regard the value of the estates assessed; and the statute contains nothing which manifests the intention of the Legislature that the degree of the benefit to each estate should be the guide; but leaves the largest discretion to the mayor and aldermen to assess upon the owner of each " his proportionate share of the expenditure of the city for drains and sewers."

The similar act, authorizing the city of Springfield to construct drains, provided that the extent of territory benefited thereby, and the proportion of the expense thereof to be borne by the owners of real estate and by the city respectively, should be determined by the city council, with a right of appeal to a jury, as in the case of laying out highways; and that the portion of the expense to be borne by the owners of real estate within the district adjudged to be benefited should be equitably and ratably assessed upon them by the board of assessors, with a right in any person aggrieved to appeal to the county commissioners as in the case of ordinary taxes. St. 1863, *c.* 107, §§ 2–4. The power given to the jury in that statute extended only to determining the proportions to be assessed on the landowners and to be paid by the

city respectively, leaving the appeal of each owner aggrieved by the amount assessed upon his estate to be decided by the county commissioners. *Patton* v. *Springfield,* 99 Mass. 627. And in *Springfield* v. *Gay,* 12 Allen, 612, the court was of opinion that it was not within the authority conferred on the county commissioners to go into the extent of the benefit which an estate had derived from the construction of the contemplated sewer. It may indeed be doubted whether that case was brought before the court in a proper form by a bill in equity. *Brewer* v. *Springfield,* 97 Mass. 152. *Loud* v. *Charlestown,* 103 Mass. 278. *Bow* v. *Smith,* 9 Mod. 94; *S. C.* 2 Eq. Cas. Ab. 206. But no objection was taken to the form of the proceeding, and the case was decided upon its merits.

It having been thus decided that under the Springfield Sewer Act neither the jury nor the county commissioners were authorized to determine the degree of the benefit conferred upon any particular estate, and the jury, under the Worcester Sewer Act, now in question, having no powers which were not conferred by the former act either upon the jury or the county commissioners, it follows that it was not open, upon appeal from the assessment by the mayor and aldermen, to inquire into the degree of benefit to the petitioner's estate by the construction of the sewer, and that she has no ground of exception to the ruling at the trial.

*Exceptions overruled.*