FRANK L. PLUMMER, Petitioner for Mandamus,

*vs.*

EDGAR L. JONES, Mayor of Waterville.

Kennebec.    Opinion November 28, 1891.

*Stat. of 1891, c. 34.    Registration Act.    Mandamus.    R. S., c. 1, § 5.*

The first and second sections of the stat. of 1891, c. 34, approved February 25, 1891 (registration act), became effective, by their terms, upon the approval of the act.

The first section creates the board of registration by language *in presenti.* The second section provides for the appointment of its members immediately upon the approval of the act, in accordance with certain specified regulations.

The remaining sections of the act are administrative provisions, not to become effective until thirty days after recess of the legislature; so that, while the board might be appointed without any considerable delay, its powers and duties were not imposed until a later time, when the administrative provisions of the act should become effective and clothe the board already appointed with power of action, thereby setting the machinery of the law in motion with the greatest practicable dispatch.

ON REPORT.

This was a petition for mandamus brought to have the court determine the time when the registration act, c. 34 of 1891, became a law, and the mayors of the cities could act under it in the appointment of members of the board of registration.

The petitioner alleges that on the seventh day of May, 1891, the Republican City Committee of Waterville, in compliance with the act, gave due notice to the mayor of the city, that he had been nominated by said committee, a member of the board, and that the committee requested his appointment according to the provisions of the act; that the petitioner is a member of the Republican party, which was the political party polling the highest number of votes for governor at the preceding state election; and that the mayor had neglected and refused to make the appointment, as notified and requested to do, and as required by said act.

After notice, the respondent appeared and answered that he had in all respects complied with the act; that on the fourth day of May, 1891, the Republican City Committee having neglected to nominate any person for the board of registration, he, the mayor, in performance of his duty under said law, had selected, appointed and commissioned Reuben Foster of Waterville, to be a member of said board on the part of the Republican party, . . . and said Foster had accepted and "now holds said commission,— all before the filing of this petition."

The defendant contended that the legislature intended that sections one and two of the act, relating to the organization of the board of registration, took effect immediately, by force of their terms, upon the approval of the act; and that more than seven days thereafter having elapsed without any nomination being made by the Republican City Committee, the act required him as mayor to make the appointment.

The petitioner contended that the act, as a whole, did not go into operation until May 4, 1891, thirty days after the adjournment of the legislature, which was April 3, 1891; and, therefore, Foster's appointment was premature and invalid.

Sections one, two and fifteen of the act are as follows:

"An act to provide a board of registration in the cities of this State.

"Be it enacted by the Senate and House of Representatives in legislature assembled, as follows:

"Section 1. A board of registration is hereby established in

each city of the State which shall have the exclusive power and authority to determine the qualification of voters therein, and exclusive power to make up, correct and revise the list of voters in each of said cities, and shall perform all the duties and have, exclusively, all the powers now exercised by the municipal officers of said cities in making, preparing, revising and correcting the list of voters therein under chapter four of the Revised Statutes or any other statute relating thereto."

"Section 2. Said board shall consist of three members who shall be residents and legal voters of the city where such board is established, one of whom shall be appointed and commissioned by the governor by and with the consent of his council for a term of four years, but the first term shall expire May 1, 1895, and who shall not hold or be eligible to any elective municipal office during said term. Said member of said board shall be appointed immediately upon the approval of this act. The other two members of this board shall be chosen one from the political party polling the highest number of votes for governor in this State at the next preceding State election and one from the political party polling the next highest number of votes for governor of this State at said election and they shall each hold their office for the term of two years, but the first term shall expire May 1, 1893, and said members shall not hold or be eligible to any elective municipal office during said term. Each shall be nominated by the city committee of his own political party and upon due notice thereof in writing, the several mayors of said cities shall forthwith appoint such persons so nominated members of said board. If either or both of said political parties for the space of seven days after the approval of this act or after a vacancy occurs in such board by its said committees, neglects or refuses so to nominate a member of such board and to notify the mayor of such city thereof said mayor shall select and appoint a member of said board from the political party so neglecting and refusing to nominate. And in case any member of said board so appointed by said mayor, neglects or refuses to act as a member of said board the other two shall proceed with the business of this board as provided by this act in his absence.

And if any member of said board be absent or disqualified by sickness such mayor may fill his place for the time being by the appointment of some qualified elector of said city of the same political party as the absent member represents." . . .

" Section 15. Section forty-seven, chapter four of the Revised Statutes and all other acts and parts of acts inconsistent herewith, are hereby repealed. But the provisions of this act shall not apply to the municipal elections of the year 1891, in any of the cities in which such elections are held, or to the preparation and revision of the lists therefor."

At the hearing which took place in vacation July 31, 1891, in Kennebec, the petitioner filed in evidence, and admitted *de bene*, documentary testimony, as follows: Original draft of bill as presented to the legislature and reported from committee, copy of new draft, copy of amendments, and of original bill as passed. By the latter it appears that the words, "Section 16. This act shall take effect when approved," had been stricken out.

A preliminary question of procedure, whether the court could pass upon Foster's right to hold the office in question either on this petition or any alternative writ, was argued by counsel. The view of the case taken by the court renders a report of the argument unnecessary upon this branch. The authorities cited by counsel will be found below.

The presiding justice, finding no dispute as to the facts, reported the case to be heard at the July term of the western district of the law court.

*W. T. Haines*, for petitioner.

The bill passed substantially the same as the new draft, with the words, "take effect when approved," being stricken out. This shows the legislature intended to bring the act within R. S., c. 1, § 5. Documentary evidence admissible : Endlich, § § 1, 27, 30, 34, 509 and 510 ; Bishop Stat. Crimes, § § 70, 74 ; *Swift* v. *Luce*, 27 Maine, 285 ; *Farrell Foundry Co.* v. *Dart*, 26 Conn. 376 ; *Com.* v. *Churchill*, 2 Met. 118 ; *State* v. *Brooks*, 4 Conn. 446. If the act comes within R. S., c. 1, § 5, nothing "effective" under it can be done prior to May 4. Bish. Stat. Crim. § 31 ; *Prince* v. *Hopkins*, 13 Mich. 138 ; *McArthur* v. *Frank-*

*lin*, 16 Ohio St. 193 ; *People* v. *Johnson*, 6 Cal. 673 ; *Com.* v. *Fowler*, 10 Mass. 290 ; Endlich, § § 496, 498-9 ; *Gorham* v. *Springfield*, 21 Maine, 58 ; *Simmons* v. *Jacobs*, 52 *Id.* 158 ; *New Portland* v. *New Vineyard*, 16 *Id.* 69 ; *Holmes* v. *Paris*, 75 *Id.* 559 ; Sedg. Stat. & Const. Law, 2d Ed. p. 67, citing *Kennedy* v. *Palmer*, 6 Gray, 316, that a law speaks from the time of its going into effect. *Jackman* v. *Garland*, 64 Maine, 133 ; *Winslow* v. *Kimball*, 25 *Id.* 493 ; *Palmer* v. *Hixon*, 74 *Id.* 447 ; *Damon's Appeal*, 70 *Id.* 153 ; *Com.* v. *Bennett*, 108 Mass. 31 ; *Gray* v. *Co. Com.* 83 Maine, 429.

A statute is a nullity until it takes effect ; and where there is no expressed provision in the statute itself as to when it takes effect, it must take effect by virtue of the general law. In considering the legislative intent as to when this statute would take effect, the history of its enactment as shown by the record, shows that the phrase used in § 2 providing that certain members of the board of registration should be appointed within seven days after the act was approved, was drawn with reference to a statute that should take effect when approved ; and that the legislature, when it struck out the section providing that the act should take effect when approved, made that part of the act inconsistent with the terms of the general law ; and while it was an oversight in the legislature in not changing § 2 to correspond with the striking out of the provision making the statute take effect when approved, yet the rule remains that the legislature had the right to presume that a court would consider it with reference to the established rules of construction of statutes ; which would not be to give effect to any part of the statute until the period of thirty days after adjournment had passed. Seven days after the approval of the act must be held to mean seven days after the act took effect.

Mandamus : 3 Bl. Com. 110 ; *Sanger* v. *Co. Com.* 25 Maine, 259 ; High Ext. Leg. Rem. § § 35, 49, 80, 81, 88, 108, 113, 118, 119, 133-6, 144, 324, 688, 689, 690, and cases cited ; *French* v. *Cowan*, 79 Maine, 426 ; Dill. Mun. Corp. 4th Ed. § § 215, 844, 846, and cases cited ; *Tremont* v. *Creppen*, 10 Cal. 212 (70 Am. Rep. 711) ; *Hildreth* v. *McIntire*, 1 Marsh. (Ky.) 206 ; 19 Am. Dec. 63.

*W. L. Putnam*, and *S. S. Brown*, for defendant.

Mandamus: Field Corp. § 52; *People* v. *Staples*, 5 Hill, 615; *People* v. *Detroit*, 18 Mich. 338; *Denver* v. *Hobart*, 10 Nev. 28; *Meredith* v. *Supervisors*, 19 Am. Dec. 502; *Clark* v. *Winchester*, 24 Barb. 446; *Conly* v. *Calhoun Co.* 2 W. Va. 417; *French* v. *Cowan*, 79 Maine, 426; High Ext. Rem. § § 52, 53; *King* v. *Mayor of Colchester*, 2 T. R. 260. Legislative intent controls. *Jackman* v. *Garland*, 64 Maine, 133; Endlich, § 23 and cases cited; *Damon's Appeal*, 70 Maine, 156; *Stone* v. *Charlestown*, 114 Mass. 228. If § § 1 and 2, did not go into effect until the thirty days' period arrived, we could have no registration board for a long time; and the act repeals all previous statutes. And when would the seven days begin to run? Giving effect to all parts of the act, according to the authorities, it must be from the time of approval.

The last section of this act clearly indicates that the legislature intended that the organization of the boards of registration should be perfected before the thirty days' limit expired, because it specially provided that the board should not act in preparing the lists for the last spring elections in the several cities. These elections all take place in March, and if by the act it was intended that these boards should not be organized till the expiration of thirty days, at least, after the legislature adjourned, there would have been no need of this provision, because under the thirty days' theory no part of the act would take effect till May 4, which would be long after all the spring elections had taken place, as the legislature adjourned April 3, and the thirty days' period would last to the fourth of May. So we find the act, at the beginning and at the close, containing clear and unmistakable evidence that the legislature intended that the law should take effect so far as the organization of the registration board was concerned, when approved by the Governor.

HASKELL, J. The public interest requires a decision of this case upon the merits, and the result of this judgment does not call for any consideration of questions of procedure, and none is given.

By virtue of § 5, c. 1, of R. S., applicable to all statutes of the State, the registration act of 1891 took effect "in thirty days after the recess of the legislature passing it, unless a different time is named therein." No time, when the administrative provisions of the act shall become effective is named therein, and they become operative, therefore, in thirty days after the recess of the legislature, but, by special provision, do not apply to the approaching spring elections. Sections one and two, however, that create the board and provide for the appointment of its members, are said by their terms to become effective upon the approval of the act, and whether that be so is the impending question here.

There is no legal objection to different provisions of the same statute taking effect at different times at the will of the legislature passing it. *Workman* v. *Worcester*, 118 Mass. 168; *Stone* v. *Charlestown*, 114 Mass. 214.

Section one of the registration act provides : "A board of registration is hereby established in each city of the State," &c. Section two provides that it shall consist of three members, &c., "one of whom shall be appointed and commissioned by the Governor . . . immediately upon the approval of this act." Of the other two, it provides that "each shall be nominated by the city committee of his own political party, and upon due notice thereof, in writing, the several mayors of said cities shall forthwith appoint such persons, so nominated, members of said board. If either or both of said political parties, for the space of seven days after the approval of this act, . . . neglects or refuses to nominate a member of such board and to notify the mayor of such city thereof, said mayor shall select and appoint a member of said board from the political party so neglecting and refusing to nominate."

Section one begins : "A board of registration is hereby established," &c. "The use of language *in presenti* is too common in legislation to afford any indication of an intention" that the act shall then take effect; *Gorham* v. *Springfield*, 21 Maine, 58 ; but when coupled with other provisions of the same law that would otherwise be meaningless, the whole enactment

should be construed together, so as to give effect to the expression of the whole statute and do violence to the plain language of no part.

By holding section one operative *in presenti* by reason of the provisions of section two, no construction is given to it in violation of its plain language, and the plain provisions of section two are also thereby harmonized; for that section plainly declares that the Governor of the State shall appoint one member of the board "immediately upon the approval of this act;" and the mayors of the several cities are required, upon nomination by the requisite political parties, to forthwith appoint the other two; and if, "for the space of seven days after the approval of this act," such nominations are neglected by the requisite political parties, the act says, the "mayor shall select and appoint."

Any other construction of these two sections of the act would be in violation of their express words; and lawyers have been taught from the days of Coke : "They ought not to make any construction against the express letter of the statute, for nothing can so express the meaning of the makers of an act as their own direct words, for *index animi sermo*. And it would be dangerous to give scope to make a construction in any case against the express words, when the meaning of the makers doth not appear to the contrary, and when no inconvenience will thereupon follow." *Edriche's case*, 5 Co. 118.

Sometimes the letter of a statute may destroy the sense of it, and then, says the learned Plowden : "It is not the words of the law but the internal sense of it that makes the law, and our law (like all others) consists of two parts, viz., of body and soul; the letter of the law is the body of the law, and the sense and reason of the law is the soul of the law, *quia ratio legis est anima legis*. And the law may be resembled to a nut, which has a shell and a kernel within, the letter of the law represents the shell, and the sense of it the kernel, and as you will be no better for the nut if you make use only of the shell, so you will receive no benefit by the law, if you rely only upon the letter,

and as the fruit and profit of the nut lies in the kernel, and not in the shell, so the fruit and profit of the law consists in the sense more than in the letter.　And it often happens that when you know the letter, you know not the sense, for sometimes the sense is more confined and contracted than the letter, and sometimes it is more large and extensive." *Eyston* v. *Studd*, Plowd. 465.

By considering the first and second sections of the act to become operative on approval, the plain language of the legislature is regarded, and no inconvenience or absurdity flows from the result.

Indeed, we know that both the original bill and the new draft of it that came from the committee specially provided that the whole bill should take effect upon approval.　During some stage of its passage, that provision was stricken out and a provision that it should not apply to the approaching spring elections added, leaving sections one and two, creating the board and providing for their appointment, to become effective as originally intended; and we think the true construction of the act is to hold those sections operative from the date of the approval of the act as originally intended.

　　　　　　　　　　　　　*Petition dismissed with costs.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.