Hillsborough, }
Dec. 31, 1903. }

## STATE *v.* WENZEL.

A vote upon the adoption of a statute, taken in accordance with its terms and on the day designated therein for that purpose, is not invalid merely because the date specified for the town-meeting was prior to that upon which the general provisions of the act were to take effect.

A confession of guilt by one suspected of a statutory misdemeanor is not admissible in evidence for the purpose of showing that a subsequent act of the same character, for which he is under indictment, was committed with a like intent, when the existing statute makes the act a felony and substantially increases the penalty.

A charge of keeping intoxicating liquor for sale is sustained by proof that the respondent, when requested, furnished such beverages with meals supplied to his boarders, the price of which included payment for the liquor so served.

INDICTMENT, for keeping intoxicating liquor for sale on June 7, 1903, in Manchester, where chapter 95, Laws 1903, was enforced, and where the respondent was not licensed to sell. Trial by jury and verdict of guilty. Transferred from the September term, 1903, of the superior court by *Peaslee,* J.

It appeared that the city voted to adopt the provisions of said act, May 12, 1903. The respondent moved that the indictment be quashed, because the act did not go into effect until May 15, and therefore the vote was of no effect. The motion was denied, and he excepted. Subject to exception, the state proved that in December, 1902, the respondent was suspected of illegally selling liquors, was warned by the police, acknowledged his guilt, and promised not to violate the law in the future.

One defence set up was that the beer found upon the respondent's premises was for the use of his boarders. He excepted to the following instruction to the jury: " If the agreement was that the boarders who paid the regular price were entitled to have beer to drink with their meals when they called for it, and the beer was kept to be dispensed when called for under such agreement, it was kept for sale."

*Edward H. Wason,* solicitor, for the state.

*John P. Bartlett,* for the defendant.

WALKER, J.   1. It is contended in behalf of the respondent, that as the statute (Laws 1903, *c.* 95) known as the license law did not go into effect until after May 12, the action of the voters of

Manchester on that date, in accepting the provisions of the act, was unauthorized and void.   Section 31 of the act provides that " from and after the third Tuesday of May, 1903 [May 19], it shall be lawful to engage in the traffic in liquor under the terms of this act, in all cities and towns in the state as shall have accepted . . . the provisions of this act as herein provided.   The officers of every city or town whose duty it is to call a special meeting of the legal voters of their respective cities or towns shall call a meeting according to the statutes made and provided, on the second Tuesday of May next [May 12], at which special meeting . . . the sense of the voters shall be taken by secret ballot upon the following question: 'Shall licenses for the sale of liquor be granted in this city or town under the provisions'" of chapter 95, Laws 1903? Upon an affirmative vote, the license commissioners are directed to issue licenses according to the provisions of the act, " to be exercised in such city or town."

It is obvious from this language that the legislature intended that the act should take effect " from and after the third Tuesday of May, 1903," in such towns and cities as should, at special meetings held on the second Tuesday of May of the same year, vote to accept its provisions.   Whether it should be in force in Manchester on May 19, depended upon the previous action of the voters at the special meeting held, as provided in the act, on May 12.   No substantial reason has been suggested why, if such was the intention of the legislature expressed in apt language, it was not effective. So much of the statute as authorized special meetings of the voters to be held on May 12 was necessarily intended to be in force on that day.   The legislature did not intend to expressly provide for an unauthorized and void act; and the language used is, in respect to the point under consideration, plain and unequivocal.   It is not essential, in the absence of a constitutional requirement, that all parts of a legislative enactment should go into effect at the same time ; different provisions may acquire the force of law at different dates, according to the will of the legislature expressed therein. *Plummer* v. *Jones,* 84 Me. 58 ; *Workman* v. *Worcester,* 118 Mass. 168.   The general statute (P. S., c. 2, s. 38) providing that "every act passed at any session of the general court beginning in January shall take effect on the fifteenth day of May next following, . . . unless a different time is therein limited," does not apply to the provision authorizing a vote upon the question of the acceptance of the act, for "a different time is therein limited."

2. It was proved that in December, 1902, the defendant admitted that he was then guilty of illegally selling liquor; that is, in effect, that he was then illegally keeping liquors for sale.  *State* v. *Welch,* 64 N. H. 525.   The material or important part of the

admission was the illegality of his act, which included the criminal intent with which it was done. The fact that he was guilty of committing a crime in December is not admissible evidence that he committed a similar crime in April. *State* v. *Lapage*, 57 N. H. 245. But it is held that the fact that he did an act in December with a particular intent is competent evidence that he had the same intent in doing a similar act in April (*State* v. *Havey*, 58 N. H. 377; *State* v. *LaRose*, 71 N. H. 435, 437); and it is insisted that as the defendant kept liquors for sale in December, he had a purpose or intent to keep the liquors found on his premises in April for sale, and that it is immaterial what the legal consequences of the act may have been in either case. It results from this theory, that though the former purpose to sell liquors may have been entirely legal, it has some legal tendency to prove that the keeping of liquors at a subsequent time was with the purpose of selling them, which act was in violation of a criminal statute. Thus his intent to do a legal act connected with the keeping of liquors is regarded as proof of a later intent to do an unlawful act in reference to his possession of similar liquors. Since, however, the keeping of spiritous liquors for sale is not at common law a crime, and since men are presumed to know the law, one who is engaged in that business is cognizant of the fact that he is entirely innocent of the criminal intent, in the absence of a statute prohibiting the act; his purpose is to do what the law allows. But when the statute makes the intent to sell the liquors criminal, an inference from his former course of business, that he now keeps liquors with the intent to sell them, is illogical, unless there is a presumption that men prefer to violate, rather than to conform to, the criminal law. Hence it follows that the competency of evidence of a purpose to sell an article, in proof of a similar purpose at a later time, in an indictment for a statutory offence, necessarily involves the inquiry whether the former purpose was legal or illegal. The legal effect of the intent modifies its scope and limits its probative value. The fact that a man having no criminal purpose keeps articles for sale, is not evidence that at another time he kept them for illegal sale. If the respondent had merely said in December that he was keeping liquors for sale, the competency of his admission upon a subsequent prosecution for illegally keeping liquors for sale would necessarily depend upon the circumstances existing in December. He might have been a town agent, and his business of keeping liquors for sale might have been legal (Laws 1899, *c.* 71); and that fact would be an important circumstance which would deprive the evidence of its value as proof in a prosecution for illegally keeping liquors for sale. In short, an illegal intent cannot be inferred from a previous legal intent. Hence, the admissibility of

evidence of the previous intent depends upon an inquiry whether it was a legal or an illegal intent; in other words, the consequences of the act, under the law, give character to the intent, and determine its competency as evidence in a subsequent proceeding.

In the case at bar the evidence was that the defendant admitted that in December he was illegally keeping liquors for sale; that is, that he was then violating either section 15, chapter 112, Public Statutes, which imposes a penalty of fifty dollars for illegally keeping spirituous liquors for sale, or section 17, which imposes a penalty of ten dollars for illegally keeping malt liquors for sale. Before the commsssion of the offence alleged in the indictment, the legislature made a radical change in the law, and provided that "whoever, in a city or town wherein the provisions of this act are in force, shall sell or keep for sale liquors contrary to the provisions of this act, shall be punished by a fine of two hundred dollars and by imprisonment for not less than one month nor more than two years." Laws 1903, c. 95, s. 33. In December the defendant had an intent to dispose of the liquors he then had, in violation of the statute which declared the act to be a misdemeanor only. Does that criminal intent warrant the inference that at another time, not too remote, in doing the same physical act he had a criminal intent to violate another statute which declared the act to be a felony? State v. Felch, 58 N. H. 1. Is not the statutory change so radical as to preclude the inference of a criminal intent, which in the absence of such change might have been properly drawn? The circumstances under which the criminal intent existed and in view of which it was entertained, on the former occasion, are not the same as existed on the later occasion; they have been substantially changed by legislative action; hence it follows that a willingness to violate the former statute is not competent evidence of a willingness to violate the later statute. While a slight change in the statute with reference to the criminal quality of the act might not preclude the admission of evidence of the former criminal act, a radical and substantial change therein deprives it of legitimate probative force. It is difficult to understand the logic by which it is claimed that one's purpose to commit a misdemeanor becomes evidence of his purpose at another time to commit a felony in the doing of a similar act, unless his disposition to violate the criminal law generally is evidence of his guilt in a particular case, which is not the law. State v. Lapage, supra; 3 Rice Ev. 209. The object of the legislature in making that a felony which was before a misdemeanor was to discourage the commission of the crime, upon the natural theory that men will not as readily commit a felony as a misdemeanor; but it is sought to justify the admission of the evidence in this case upon the opposite theory that they are equally ready to commit both.

.3. The exception to the charge cannot be sustained. The instruction is unobjectionable as a legal proposition. *State* v. *Simons,* 17 N. H. 83, 89; *Commonwealth* v. *Worcester,* 126 Mass. 256.

The result is that the first and third exceptions are overruled, while the second is sustained.

*Verdict set aside.*

All concurred.