## J. C. SAVAGE v. THE STATE.

### No. 2931. Decided June 14, 1905.

**1.—Sunday Law—Sale—Lunch—Restaurant-Keeper.**

Upon a trial for a violation of he Sunday law under article 199, Penal Code, where the evidence showed that the defendant, a restaurant keeper, furnished lunches to his custome s, and served with each lunch a pint bottle or glass of beer, and that the customers paid 15 cents or 5 cents each time, ostensibly for the lunch; a ticket being made out for the lunch at 15 cents or 5 cents per lunch, and the customer being asked, by defendant's agents, when ordering the lunch what he wanted to drink, and the price of the lunch being printed on the bill of fare; the question as to whether the transaction was a sale or a gift of the beer should have been submitted to the jury for determination, and there was no error of the court in submitting such a charge.

**2.—Same—Occupations on Sunday—Hotel Keeper.**

The mere fact that a hotel keeper or restaurant keeper can pursue his occupation on Sunday, would not authorize him to violate any other prohibitory

law, and in the absence of a statute authorizing him to furnish intoxicating liquors with meals on Sunday, it is not lawful for him to do so.

Appeal from the County Court of Navarro. Tried below before the Hon. A. B. Graham.

Appeal from a conviction of a violation of the Sunday Law; penalty, a fine of $25.

The opinion states the case.

*W. W. Balew* and *J. W. Scott,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of selling beer on Sunday, under article 199, Penal Code. Appellant in his able brief presents a number of interesting questions; but in the view we take of the case it is only necessary to consider one; that is, did appellant make a sale of the beer? The proof shows that he was a restaurant keeper in the city of Corsicana; and that he also had a saloon both situated in the same building, and run in the same hall or room. The State's witnesses show that appellant as a restaurant keeper at the time and for some time before the alleged offense, was selling lunches and serving beer therewith. The proof showed that the lunches furnished were worth 15 cents each, and with each lunch he served a pint bottle of beer, and the ordinary price of this pint bottle was 15 cents. We quote from some of the witnesses' testimony on this subject, as follows: R. J. Roark (the party to whom it is alleged the sale was made) says: "I got two lunches on that day (Sunday) and two bottles of beer. I paid 15 cents each time for the lunch." Chapman (an employee of appellant) waited on him. "When I ordered my lunch, he asked me what I wanted to drink. I said a bottle of beer. I got the bottle of beer. I paid Savage, as I remember. George Chapman, who was waiting on the lunch counter, made me a ticket for the lunch, 15 cents; and I went and paid it to Savage, I think at the desk. I got the bottle of beer with the lunch; paid for what I got at the same time." This witness, on cross-examination, says: "I did not buy any beer. I bought the lunch. I ordered the lunch from the bill of fare. The beer was free with the lunch. The bill of fare said, 'anything to drink free—coffee, milk, tea, beer, wine, etc.' When I ordered my lunch George asked me what I wanted to drink, and I told him beer. I got what I ordered for my lunch and paid for it. The price of the lunch was given on the bill of fare. I have eaten in the restaurant during the week, and got a bottle of beer if I wanted it with my lunch, just as I did on Sunday." On re-examination he says: "I got a bottle of beer with each lunch. I drank the beer at the time I ate my lunch. Drank it with my lunch." Frank Holloway testified, that he with his brother and Jim Garrison, went into the restaurant together,

and got a lunch. "When we got our lunch, the waiter asked us what we would have to drink, and we each ordered a bottle of beer. I got a cheese-sandwich, radishes, pickles and a bottle of beer. I saw Garrison, who paid for all, give Chapman 50 cents, and think he got back 5 cents. I think beer costs 15 cents a bottle; two for a quarter, three for 40 cents." On cross-examination, he stated: "When they ordered their lunches they asked what they would have to drink, and each took a bottle of beer. The beer was free with the lunch. The beer was given to us by Chapman. The beer was served at the same time, but after we ordered the lunch." Elmore Holloway testified, that he got a lunch at appellant's restaurant, about May 29th; that he got a bottle of beer,—ham, eggs, vegetables and a bottle of beer. That he paid for the lunches; paid 30 cents for the two. That he was there on the 22nd of May (Sunday) and got a lunch and bottle of beer, and paid 15 cents for it to appellant; that he paid for the lunch and did not pay for anything else. Homer Baker, another witness, testified, that he went into the restaurant on the 29th of May, which was Sunday, with Frank Boyle; that he got a lunch, ham, eggs and onions, got as big a lunch for 15 cents as he could anywhere; that a bottle of beer was served with each lunch; that when he went into the restaurant he ordered a lunch from the bill of fare, which was 15 cents, and the waiter then asked him what he would have to drink, and he ordered beer. Frank Boyle testified, to the same effect; that he went there on one Sunday, got six lunches and with each lunch he got a bottle of beer free; that he bought the lunch and the beer was free with the lunch; that he ordered from the bill of fare. The testimony of the other witnesses for the State is to the same effect. However, Richard Brown states he got a lunch for 5 cents; that he paid for the lunch and got the beer. Chapman waited on him, and when he was through gave him the ticket, and witness put the money on the counter, where Savage was; that he saw on the bill of fare that beer was free with each order; that he wanted the beer and ordered the lunch and paid 5 cents for it; that he was there twice on the same day; that he paid 5 cents for the lunch each time, and got a glass of beer; that he ordered the lunch and paid for the lunch. Savage would not sell the beer. He sold the lunch and gave him the beer. It is not necessary to quote from other witnesses. All are to the same effect; that they bought a lunch and appellant gave them the beer. There is no controversy in the proof that the lunch was worth the amount charged for it. The accusation in the information is that appellant was a dealer in merchandise and as such sold to prosecutor Roark a bottle of beer on Sunday. The proof on the part of the State, to say nothing as to that offered by defendant, was, as heretofore shown, not a sale but a gift. Keller v. State, 23 Texas Crim. App., 259; Holley v. State, 14 Texas Crim. App., 505; Seigel v. Peo., 106 Ills., 94. Under the information and under the law appellant can not be held under this evidence for a sale of the beer. We do not deem it necessary to discuss the exception

contained in article 200, Penal Code, with reference to restaurants, authorizing them to keep open and do business on Sundays; nor the question which appellant has presented and cited authorities in support thereof, that such restaurant keeper, even if it be conceded that he sold the beer, had a right to dispense it as a part of the meal on Sunday as on any other day. In the view we have heretofore taken of the case, the State failed to prove a sale. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE (dissenting).—The substance of the evidence shows that appellant owned a saloon and restaurant, both situated in the same building—the saloon counter on one side and the restaurant counter on the other. At the back end of the lunch counter there was an ice-box, in which beer was stored. Appellant had a bill of fare, and at the bottom was the following: "Anything to drink free: coffee, milk, tea, beer, wine, etc." The lunches served, the witnesses swear, were worth the price asked for each lunch. Some of the witnesses bought a 15 cent lunch, and some 5 cent lunch, and with each lunch procured a bottle or glass of beer. The prosecution was for selling the beer on Sunday. On the Sunday alleged in the indictment, various parties went into the saloon or restaurant, and made purchases, and with each lunch, as stated, a bottle or glass of beer was furnished free. The case was tried before a jury, and the court, among others gave this instruction: That if the beer was sold, to find defendant guilty. "On the other hand, you are charged that it is not an offense against the laws of the State of Texas for any person to give away beer to any one on Sunday; and if you believe from the evidence that defendant gave one bottle of beer, to R. J. Roark, on May 29, 1904, you will find the defendant not guilty." The majority of the court hold that the facts do not show a sale, but a gift. The mere fact that the witnesses swear and the bill of fare states that the beer was free, would not render it any the less a part of the consideration for the purchase of the lunch, and hence I cannot agree that the facts stated do not constitute a sale. If the jury had believed appellant's testimony, under the charge above quoted, they could have found defendant not guilty. But for this court to say that the facts do not show a sale, places it within the power of a restaurant keeper to sell whisky or beer under the guise of running a restaurant. In contemplation of law the moment defendant offers on his bill of fare to give beer with each lunch purchased, this forms part and parcel of the consideration for the purchase of the lunch, and being a part of the same, constitutes in law a sale of the beer. To say otherwise, would be to hold that parties could make a direct sale, and call it a gift, and yet could not be prosecuted at all for the sale, simply because he called the sale a gift. If the opinion of the majority is the law, appellant can run a restaurant and sell whisky or beer, under the facts stated, or give it away, as he

contends, in a local option district, without prescription, since the majority hold that the facts above stated do not constitute a sale, but a gift. It is no offense, under the decisions of this court, to give away whisky or beer in a local option or non-local option district. Again, if appellant is not guilty of the sale of beer under the facts above, then he could continue running his restaurant under such circumstances, without procuring any license to sell intoxicants, and under the guise of a restaurant license sell whisky and the State would be impotent to enforce the license law upon him, for retailing spirituous, vinous and malt liquors. Since the court holds that the facts do not constitute a sale, and there is no license required for giving away intoxicants, the facts showing a gift he would not be required to get a license to sell intoxicants. So, in the view I take of the facts the decision abrogates not only the Sunday law, but the saloon license law and the local option law.

Article 9 of the 'Penal Code provides: "Every law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects. And no person shall be punished for an offense which is not made penal by the plain import of the words of a law." Article 200, Penal Code, exempts, among others, "keepers of drug-stores, hotels, boarding houses, restaurants, livery-stables, bath houses, ice dealers or telegraph or telephone offices," from the provisions of article 199, which inhibits the sale of commodities on Sunday. A restaurant is defined by Webster to be an eating house, and such it has always been construed under the law (7 Words and Phrases, p. 6181); and not where intoxicants under a subterfuge are dispensed under the guise of running a restaurant. A restaurant keeper, in contemplation of law, is not a saloon keeper. Nor is it in contemplation of law that a restaurant keeper shall sell beer and whisky. If so, there would evidently have been a tax placed upon running a restaurant similar to the tax imposed by the Legislature upon a saloon. It follows, that when the Legislature authorized a restaurant keeper to sell food on Sunday, it was not within contemplation of the Legislature that such restaurant keeper should sell beer or whisky. The mere fact that he says he gave the beer away, when he offered the beer free to his customers if they bought a lunch, does not render it any the less a sale, because the beer becomes a part of the consideration for the purchase. Being such it is a sale, and is directly inhibited by the Sunday law. No such construction has ever been placed upon this article before; no saloon has ever attempted in Texas, so far as the writer knows, to evade the provisions of the Sunday law in the manner indicated by this record. I take it that the facts show a gross subterfuge; that the jury have properly found appellant guilty, and the facts, instead of presenting the issue of a gift, almost, if not quite exclude such an issue as a question of fact. The jury were more

than warranted in finding the verdict they did. However, the learned trial court did submit the question to the jury as to whether or not it was a sale; and the jury have decided it was. I do not think this court is warranted in holding that the above stated facts do not constitute a sale. If the facts do not make out a sale, then all that is necessary, in order to dispense intoxicants on Sunday, would be for the restaurant keeper to sell certain viands, and then give, as he would term it, whisky or beer free. This character of transaction, under the opinion of the majority, would exempt him from a prosecution for the sale of the whisky; would exempt him from paying the license tax for the sale of intoxicants; would exempt him from a violation of the local option law: and all that he would be required to do, would be to pay an occupation tax to run a restaurant, and then he is exempt from any species of prosecution by the subterfuge he has resorted to. Therefore, I cannot agree to a reversal of this case, because it destroys each and every one of the statutes above referred to; and so believing I file this my dissenting opinion.

ON REHEARING.

June 23, 1905.

Motion for Rehearing Overruled February 21, 1906.

HENDERSON, JUDGE.—This case was reversed at a former day of this term (Judge Brooks, dissenting), and now comes before us on motion by the State for rehearing.

We notice in the dissenting opinion, it is stated that the court charged in favor of appellant on the subject of gift, and told the jury that it is not an offense against the laws of the State of Texas for any person to give away beer to any one on Sunday, and if they believed defendant gave the bottle of beer in question to R. J. Roark, to find him not guilty. Among other things, in the dissent, it is stated, if the jury had believed appellant's testimony under the charge above quoted, they would have found defendant not guilty. It occurs to us that this concession is too broad, and in effect disposes of the State's case, as we can see no difference between appellant's testimony and that for the State. With one accord all of the witnesses, both for the State and the defendant, appear to agree that the lunch in question was paid for; in fact all lunches were paid for, and that the beer or other drink was furnished free.

We further note that the dissenting opinion brings the local option law into the case, and refers to the effect that the holding of the court will have in local option territory. We presume that no one knows better than our Brother Brooks that on this record the sale of intoxicating liquor could not be maintained, inasmuch as nowhere is it shown that the beer alleged to have been sold was an intoxicant, and this court holds such proof must be made before the conviction can be had. Enno Cassens v. State, decided at present term, and cases there cited.

But to get away from local option and to recur to the case, which is a prosecution brought under article 199, Penal Code, in which appellant is charged as a dealer in goods, wares and merchandise, with the sale of a bottle of beer to one Roark, on a certain Sunday. Let us review the question, and see whether or not on principle and under the authorities the evidence shows a sale of the beer in question. The Assistant Attorney-General, lawyer like, has postulated a case to us. Assume, he says, that H. & K. (clothiers of the city of Austin) advertised that with every $25 suit of clothes sold they will give a hat, worth $5. Seeing the advertisement A purchases of said firm a suit of clothes, for which he pays $25. They do not deliver the hat, which he demands as a part of the consideration. Can he recover the hat or its value under such circumstances? He insists that the hat or its value can be recovered as a. part of the consideration for which the $25 was paid. He not only makes this illustration, which is an exceedingly apt one, but he cites us to cases supporting his contention. Among others, Com. v. Thayer, 8 Met. (Mass.), 525; State v. Simons, 17 New Hamp., 83. In the first case there was a complaint against defendant for selling to Albert Hersey a glass of spirituous liquor on the 19th of February, 1844.. It appeared that defendant was the keeper of a public house, in which was a bar and a bar-keeper. State's witness Hersey testified that he never bought any spirituous liquor from defendant. He bought a cake of him for 6 cents, and at the same time a decanter of spirituous liquor was set upon the bar, from which he helped himself; that he never bought a similar cake for less than 6 cents; that he did not know the value of the same. The court below instructed the jury, if they believed that any part of the 6 cents was given to the witness and received by defendant to pay for the liquor, it constituted a sale, and the defendant was guilty. The jury returned a verdict finding defendant guilty, and he alleged exceptions to said instruction. The court in passing on the question here presented, say: "The question whether the defendant sold the liquor as alleged in the complaint, was submitted to the jury under proper instructions. The government alleged the sale to Albert Hersey, of one glass of spirituous liquor, and was bound to establish the fact. To constitute such sale, there must be the assent of the two parties. There must be a vendor and a vendee. But no words need be proved to have been spoken. A sale may be inferred from the acts of the parties, and no disguise which the parties may attempt to throw over the transaction with the view of evading the penalty of the law, can avail them, if in truth such sale is found to have taken place. The ruling of the presiding judge, as to the payment of any part of the money, and the receipt thereof in payment for the liquor, constituting a sale, was correct." In the Simons case, supra, "the indictment alleged that defendant, not being a licensed taverner or retailer, sold two glasses of spirituous liquors to one George Stevens, on the first day of January, 1845. It appeared that about the first of January, 1845, said Stevens and one James Collins came

into defendant's cellar in Manchester, where he kept fruits and con-fectionery, and Stevens called for some spirits, but the defendant re-plied that he did not sell spirits, and refused to sell them any; that Stevens then bought a pound of walnuts, and paid him 16 cents for them, and the defendant said he had opened a new cellar, and wished Stevens to look about it, and said further that he could afford to treat, and then took Stevens and Collins into a back cellar, under the tene-ment, which he occupied, and asked them what they would take, naming over the kinds of liquor contained in the casks which stood in the cellar. Stevens answered 'rum,' and he let each of them have a glass of it. Both cellars were under the same building, but separated by a reading room. Defendant's counsel requested the court to instruct the jury that 'there was a sale of the nuts and the purchase money paid, and a delivery; that the sale was therefore complete, and that no article delivered afterwards could be included in that sale; and also that the spirituous liquor alleged in the indictment to have been sold, was a gift.' But the court declined, and instructed the jury, that if they found that the sale of the nuts was a bona fide sale of the nuts only, and the delivery of the spirit was in no way consequent upon the sale of the nuts, but was a gift, the defendant was not chargeable; but if they found that the sale of the nuts was made with the intention of including also the price of the liquor, and that the price of the liquor was taken and included in the money paid ostensibly for the nuts, it was the same as if the liquor had been sold directly, and with-out any such subterfuge; that in the latter case it would make no difference whether the spirit was delivered before or after the payment of the money." The court say, upon this branch of the case: "As to the evidence of the sale of the liquors, it was a question of fact for the jury, and the evidence was properly submitted to them. They were instructed to inquire whether the language used by the parties to the alleged sale, and their accompanying acts, were used by them to effect a sale of the liquor under such disguises as would render the detection of the crime difficult; or whether, on the other hand, it was the pur-pose of the defendant to bestow, and of the other parties to receive, the liquors as a gift. Offenses against the law are commonly com-mitted under the protection of some false pretenses designed to avert or baffle the vigilance of the police, and other evidence than the plain admissions of the parties charged is commonly found necessary for their conviction. The question was, did the prisoner sell the liquor as charged? and not, did he use language while he sold it that admitted the criminal nature of the act? The jury were authorized to find a sale, from the call which was made for the article, and its subsequent delivery, and to attach such weight to the words of the prisoner while committing the act, as they thought the words deserved."

These cases are very much in point, and had they been called to our attention originally we undoubtedly would have held that the transac-tion narrated by the witnesses in dispensing the beer amounted to a

sale, and under proper instructions the jury would be authorized to so find. We do not think the instructions given by the court below on this point are full enough or in accord with the authorities before referred to. However, no exception was reserved to the charge on that account. In accord with the principle announced in the cases cited, we hold that it was competent for the jury to find that the beer constituted a part of the consideration for the 15 cents given for the lunch. Ordinarily it would appear that a party might sell one article and make a gift of another. The testimony of the witnesses, both for the State and defendant, was to this effect: that is, that the beer was not sold; the lunch was the article bought, and the beer was a mere gift. It occurred to us, in the original opinion, that this character of testimony settled the case in favor of defendant, inasmuch as no effort was made on the part of the State to show that the lunch was of less value than was charged. In fact the lunch was shown to be of equivalent value. It occurred to us that under similar circumstances, if the saloon keeper set up free lunch to the customer should he come in and purchase a glass of beer, and at his option partake of the free lunch, that this would not amount to a sale of the lunch, but merely a gift; and such seems to be the common understanding. However, as stated, the authorities cited establish the contrary doctrine, and leave the sale or gift a matter to be determined by the jury under proper instructions, and on a more deliberate investigation of this question, in connection with the authorities furnished by the Assistant Attorney-General, we believe that this is the correct doctrine.

There is another question urged by appellant why the case should be reversed, which was not noticed in the original opinion, because it was not necessary as the case was reversed before we reached the second question. That is, whether a restaurant keeper or a hotel keeper is authorized in this State to furnish malt liquors and wines with meals to his guests. On this branch of the case appellant refers us to the following authorities: Atkinson v. Sellers, 94 E. C. L., 447; Fisher v. Howard, 10 Cox, C. C., 144; Taylor v. Humphreys, 100 E. C. L., 429. In re Breslin, 45 Hun (N. Y.), 210; Com. v. Molter, 142 Mass., 533. The first three cases are from English courts, and were decided under statutes of Queen Victoria, authorizing hotel keepers to furnish liquors to guests. And so the New York case and the Massachusetts case were both under statutes to the same effect. In this State we have no such statute. The mere fact that the hotel keeper or restaurant keeper can pursue his occupation on Sunday, would not authorize him to violate any other prohibitory law. In the absence of some statutory enactment in this State authorizing hotel keepers or restaurant keepers to furnish liquors with meals on Sunday, we hold that it is not lawful for them to do so.

There are some other questions raised in appellant's assignments of error, but we do not deem them of sufficient importance to review. The motion for rehearing is granted, and the judgment is affirmed.

*Affirmed.*

BROOKS, JUDGE (dissenting).—I did not agree to the original opinion, as shown by my dissent; nor do 1 agree to anything in the opinion on rehearing, except the conclusion reached. In illustrating the effect of the original opinion upon the local option law, I stated, that if appellant could give away whisky or lager beer, under the subterfuge resorted to in this case, then it would destroy the local option law. At least this is the substance of what I stated. Predicated upon that statement in my dissent, I find the opinion of the majority on motion for rehearing contains this very sage suggestion: "We presume that no one knows better than our Brother Brooks that on this record the sale of intoxicating liquor could not be maintained, inasmuch as nowhere is it shown that the beer alleged to have been sold was an intoxicant, and this court holds such proof must be made before the conviction can be had." It is quite charitable for the majority to presume that I know this decision, since I participated in its rendition. I did not apprehend any one would be so obtuse as to place such construction upon my dissent as to infer that I did not know it. I ascertain that the State would have had no trouble, if the issue had been joined, to have proven that the beer sold was lager beer and an intoxicant.

The opinion on rehearing seems to be predicated in part upon a postulate of the Assistant Attorney-General, made "lawyer-like," which the writer hereof understands to be an axiomatic statement of the law of sales laid down in all the books. But the majority opinion, in addition to the Assistant Attorney-General's postulate, cites two decisions of courts of last resort rendered about the year 1845, and then states, "That these cases are very much in point, and had they been called to our attention originally, we undoubtedly would have held that the transaction narrated by the witnesses in dispensing the beer amounted to a sale, and under proper instructions the jury would be authorized to so find." It is certainly fortunate for the laws of this State, that the Assistant Attorney-General found these two antique decisions, which very aptly announce a principle of the law of sales that is as old as the law itself. But since the majority seem to base their conclusion upon the postulate of the Assistant Attorney-General, and the two decisions cited, I have no cause to disagree with the conclusion they reach.

I also note that the majority hold that a restaurant or hotel keeper is not authorized in this State to furnish malt liquor or wines with meals to his guests. I concur in this conclusion. As stated, in my dissenting opinion, a restaurant is what the word imports—a place where viands are sold, and not where intoxicants are disposed of. This being true, it follows as night the day, that the restaurant keeper cannot sell whisky or beer—being intoxicants—unless he has a license to do so, nor can he sell it on Sunday. This has been the law ever since this was a government, and so understanding it, I concur in the conclusion reached.