

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 30, 1992

Honorable Doyle Willis
Chairman
General Investigating Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-84

Re: Whether the owner of a restaurant in a dry area violates section 101.31 of the Alcoholic Beverage Code by giving away wine to patrons or using alcoholic beverages for cooking (RQ-38)

Dear Representative Willis:

You ask whether a restauranteur may possess and use alcoholic beverages in his restaurant in a "dry" area of the state. The Texas Constitution provides that the legislature shall enact laws authorizing the voters of any county, justice's precinct, or incorporated town or city to determine by majority vote whether the sale of intoxicating liquors for beverage purposes shall be prohibited or legalized. Tex. Const. art. XVI, § 20(b); *see* Alco. Bev. Code ch. 251 (local option elections). The laws shall permit voting on the sale of intoxicating liquors of various types and alcoholic content. *See* Alco. Bev. Code § 251.14. An area is a "dry area" as to an alcoholic beverage of a particular type and alcoholic content if the sale of that beverage is unlawful there. *Id.* § 251.71(a).

You ask the following two questions about the owner of a restaurant in a dry area:

1. Whether a restaurant owner or employee who gives away, at the sole discretion of the owner, a glass of wine to patrons during their meals eaten in the restaurant, would be in violation of section 101.31, V.T.C.A., Alcoholic Beverage Code, where the premises are located in a dry area.

2. Whether a restaurant owner who possesses alcoholic beverages for the purpose of use in cooking or preparation of meals sold to patrons would be in violation of section 101.31, V.T.C.A., Alcoholic Beverage Code, where the premises are located in a dry area.

In addressing your questions, we assume that the area is dry as to all alcoholic beverages, including wine. In response to your first question, we conclude that a restauranteur or his employee may not give away a glass of wine to patrons during meals in a dry area without violating section 101.31 of the code.

Section 101.31 of the Alcoholic Beverage Code sets forth the following:

> Except as otherwise provided in this code, no person in a dry area may manufacture, distill, brew, sell, import into the state, export from the state, transport, distribute, warehouse, store, solicit or take orders for, or possess with intent to sell an alcoholic beverage.

Relying in part on *Savage v. State*, 88 S.W. 351 (Tex. Crim. App. 1905), this office concluded in Attorney General Opinion C-421 (1965) that the owner of a motor hotel and restaurant in a dry area who gave away beer or mixed drinks with meals would be in violation of the prohibition on sales of alcoholic beverages in dry areas. The issue in *Savage* was whether the "gift" of alcoholic beverages was, in fact, a gift or was actually a sale for purposes of the Sunday "closing law." The court initially held that the state failed to prove a sale. The dissent to this opinion stated as follows:

> In contemplation of law, the moment defendant offers on his bill of fare to give beer with each lunch purchased, this forms part and parcel of the consideration for the purchase of the lunch, and, being a part of the same, constitutes, in law, a sale of the beer. To say otherwise would be to hold that a party could make a direct sale, and call it a gift, and yet could not be prosecuted at all for the sale, simply because he called the sale a gift.

*Savage, supra,* at 353. On rehearing, the majority concluded that the restauranteur had violated the law against selling intoxicating liquor on Sunday. *Id.* at 355. Attorney General Opinion C-421 analyzed the reasoning and conclusion of *Savage* and determined that it stood for the proposition that the furnishing of alcoholic beverages with meals constitutes a sale of the beverage as a matter of law. Attorney General Opinion C-421 at 3. This conclusion is well expressed by the language of

the dissent quoted above and by the following language, which Attorney General Opinion C-421 also relied on:

> The purchase of a meal includes all the articles that go to make up the meal. It is wholly immaterial that no specific price is attached to those articles separately. If the meal included intoxicating liquors, the purchase of the meal would be a purchase of the liquors. It would be immaterial that other articles were included in the purchase, and all were charged in one collective price. If a dealer should undertake to present a glass of liquor to everybody who should purchase some small article of him, it would be considered a mere evasion of the law prohibiting the unlicensed sale of intoxicating liquors . . . .

Attorney General Opinion C-421 at 4 (quoting *Commonwealth v. Albert W. Worcester*, 126 Mass. 256 (1879)) (emphasis in opinion); *see also* Annot., 89 A.L.R. 3d 551, §§ 15, 21(c) (1979) (sale of liquor).

Attorney General Opinion C-421 is dispositive of your first question. A restauranteur whose premises are in a dry area would violate section 101.31 of the Alcoholic Beverage Code by giving wine to patrons during meals at his restaurant.[1]

You next ask whether a restauranteur would violate section 101.31 of the Alcoholic Beverage Code by possessing alcoholic beverages in a dry area for the purpose of use in cooking or preparation of meals sold to patrons. Section 1.04(1) defines alcoholic beverage as follows:

> In this code:
>
> (1) "Alcoholic beverage" means alcohol, or any beverage containing more than one-half of one percent of alcohol by

---

[1]We note that there is now an express statutory exception to the general prohibition found in section 101.31 that authorizes the furnishing of alcoholic beverages in dry areas. In 1979, the legislature amended the private club provisions of the code, found in chapter 32, to allow the "pool system" of alcoholic beverage storage to be "used in any area" in private clubs. Acts 1979, 66th Leg., ch. 777, § 8, at 1968; *see now* Alco. Bev. Code § 32.06(a). A private club registration permit authorizes alcoholic beverages to be stored and served on private club premises. Alco. Bev. Code § 32.01. The use of the pool system of storage allows a private club to be located in a dry area.

volume, which is capable of use for beverage purposes, either alone or when diluted.

Section 101.31 provides that no person in a dry area may "manufacture, distill, brew, sell, import into the state, export from the state, transport, distribute, warehouse, store, solicit or take orders for, or possess with intent to sell an alcoholic beverage." Possession of more than one quart of liquor in a dry area creates a rebuttable presumption of possession with intent to sell. Alco. Bev. Code § 101.32; *Walden v. State*, 272 S.W. 139 (Tex. Crim. App. 1925). "Liquor" includes wine, as well as any other alcoholic beverage containing alcohol in excess of four percent by weight. Alco. Bev. Code § 1.04(5).

If the restauranteur possesses more than one quart of an alcoholic beverage, he will be subject to the presumption that he possesses it "with intent to sell" pursuant to section 101.32. Whether he would be able to overcome this presumption by presenting evidence about using it in preparing meals involves the resolution of fact questions that cannot be addressed in the opinion process. For example, it has been suggested that although some alcohol may be used in the preparation of certain dishes, the alcohol may be completely evaporated by the time the food is ready for consumption. Accordingly, we decline to answer your second question.

## SUMMARY

The owner or employee of a restaurant in a dry area would violate section 101.31 of the Alcoholic Beverage Code if he gave a glass of wine to patrons during meals purchased at the restaurant. Whether the owner or employee of a restaurant violates the code by adding alcohol to food is a question of fact that cannot be resolved in the opinion process. Although possession of a quart of alcohol creates a presumption that an individual possesses with intent to sell, the presumption is rebuttable, depending on the facts of any given circumstances.

Very truly yours,

DAN MORALES
Attorney General of Texas

**WILL PRYOR**
First Assistant Attorney General

**MARY KELLER**
Deputy Assistant Attorney General

**JUDGE ZOLLIE STEAKLEY (Ret.)**
Special Assistant Attorney General

**RENEA HICKS**
Special Assistant Attorney General

**MADELEINE B. JOHNSON**
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General