COMMONWEALTH *vs.* WILLIAM H. WARREN.

Suffolk.      January 29, 1894. — February 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, & MORTON, JJ.

*Milk — Statute — " Sale."*

A person may be convicted of violating St. 1886, c. 318, § 2, whose servant in the course of his employment makes an inadvertent sale of milk "not of good standard quality."

If milk is ordered by and delivered to a customer in a hotel as a part of his breakfast, for which he pays a round sum, it is a sale of the milk which, if the milk is "not of good standard quality," will support a complaint on St. 1886, c. 318, § 2.

COMPLAINT, on the St. 1886, c. 318, § 2, alleging that the defendant, on August 26, 1893, at Boston, sold to Edward Kelly a certain quantity of milk "not of good standard quality."

Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows.

The evidence for the government tended to show that, in August, 1893, one Edward Kelly, a sample collector of milk, in the employment of the inspector of milk, called at a hotel known as the Bay State House, in Boston, and ordered a breakfast in the dining-hall of the hotel, which was a public house conducted by the defendant and his son on the American plan, so called; that Kelly called for a glass of milk with his breakfast, which was furnished him by the girl who waited upon him; and that a part of this glass of milk was taken away from the hotel in a bottle, and subsequently analyzed by a chemist, and found to contain less than thirteen per cent of milk solids.

Kelly testified that he paid thirty-five cents for his breakfast, and nothing for the milk as distinct from his breakfast; that he paid the clerk in the hotel office; and that neither the proprietors nor the clerk knew that he had ordered the glass of milk at the time he made the payment.

The evidence for the defendant tended to show that he purchased for consumption in his hotel standard milk only, and all of it at standard prices, and no other quality of milk was used in the hotel, unless as stated hereafter; that the defendant took his milk after it had stood for some hours and poured off the top of the milk in all the cans into small cans, for use on the tables in the dining-hall of the hotel, and saved the residue for use in the hotel kitchen, and instructed all his waiters and other help to allow no milk to be served for the table not taken from the small cans; that the defendant offered no milk of any kind for sale, nor kept any for sale, distinct from his regular meals, and not a part thereof; that he knew nothing of Kelly's call at his hotel until the commencement of this prosecution; that his regular price for a breakfast was thirty-five cents; and that Kelly would have been charged the same price if he had not called for milk. The defendant's bills of fare which were used in the hotel at the time of the alleged sale were produced, and no milk appeared thereon.

The defendant contended, and asked the judge to rule, that, under a proper interpretation of the statute, he had sold no milk contrary to law, and was not amenable to the statute; and that,

if the table girl took milk from the cans designed for the use of the hotel kitchen contrary to his instructions, he was not answerable therefor under this complaint.

The judge declined to rule as requested, and instructed the jury that if the defendant's servant, in the ordinary course of her employment, acting in good faith and intending to obey the defendant's instructions, delivered to Kelly upon his order the milk in question as a part of Kelly's breakfast, for which breakfast Kelly paid thirty-five cents, and the milk was not of good standard quality, the defendant was responsible under the statute, notwithstanding the servant negligently and by mistake took the milk from a can which had been set apart for use in the kitchen ; but that the defendant was not responsible if his servant, in furnishing the milk upon Kelly's order, intentionally acted in disobedience of the defendant's instructions.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*P. H. Hutchinson*, for the defendant.

*F. E. Hurd*, First Assistant District Attorney, for the Commonwealth.

MORTON, J.    The statute makes a party liable for a sale by himself, or by his agent or servant, of milk not of the standard quality.    St. 1886, c. 318, § 2.    No criminal intent on the part of the master or principal is necessary in order to render him liable for a sale in violation of the statute, and he may consequently be held liable for an inadvertent sale in the course of his employment on the part of his servant or agent in violation of the statute.    *Commonwealth* v. *Gray*, 150 Mass. 327.    The instructions on this point were sufficiently favorable to the defendant.    See *Commonwealth* v. *Emmons*, 98 Mass. 6 ; *Commonwealth* v. *Kelley*, 140 Mass. 441.    The milk bought by the witness Kelly was purchased by and delivered to him as a part of his breakfast, and was just as much a sale as if a specific price had been put upon it, or it had been bought and paid for by itself.    *Commonwealth* v. *Worcester*, 126 Mass. 256.

*Exceptions overruled.*