[No. 17374.   Department Two.   April 3, 1923.]

THE STATE OF WASHINGTON, *Respondent*, v. GRAYS
HARBOR COMMERCIAL COMPANY, *Appellant*.[1]

FOOD (3)—CRIMINAL PROSECUTION—SALE OF IMPURE FOOD—STAT-
UTES—CONSTRUCTION. There is a "sale" of adulterated or misbranded
food, in violation of Rem. Comp. Stat., § 6144, where a sawmill
company, operating a boarding house, charged employees for their
board and furnished decomposed and contaminated meat, within the
definition of "adulterated" in Id., § 6146.

SAME (3)—CRIMINAL PROSECUTION—INSTRUCTIONS. In a prosecu-
tion of a company operating a boarding house, for possession of
decomposed and contaminated meat, with intent to sell, in violation
of Rem. Comp. Stat., §§ 6144, 6146, where there was evidence that
samples taken were not for use but were to be thrown away, an in-
struction that, if the meat in question was not to be served but was
to be thrown away, the defendant was not guilty, is as favorable as
the law and facts permitted.

Appeal from a judgment of the superior court for
Grays Harbor county, Clifford, J., entered March 25,
1922, upon a trial and conviction of a violation of the
pure food law. Affirmed.

*John C. Hogan* and *A. E. Cross,* for appellant.

*George Acret* and *R. A. Lathrop,* for respondent.

PEMBERTON, J.—The defendant was charged by
amended information with the crime of having in its
possession with intent to sell decomposed and con-
taminated food, the charging part of the information
being as follows:

"That the above named defendant, Grays Harbor
Commercial Company, during all times material to
this action has been and now is a corporation doing
business in the state of Washington; that upon the
12th day of November, 1921, said defendant corpora-
tion did unlawfully have in its possession within said
county and state, with intent to sell the same, certain

[1] Reported in 214 Pac. 13.

impure and adulterated, decomposed and contaminated food, to wit, decomposed and putrid meat, the same being the portion of an animal unfit for food, and being a decomposed and putrid animal substance then and there unfit for human food. Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Washington.''

A trial by jury resulted in a verdict of guilty as charged, and from judgment entered upon the verdict, the defendant appeals.

Appellant's first claim of error is as follows:

''The court erred in overruling the defendant's motion for a directed verdict at the close of the state's testimony, on the ground of variance between the charge of the information and the attempted proofs, in that the information charged possession of the meat in question with intent to sell the same, and the attempted proof offered by the state was to the effect that the defendant had the meat in its possession with intent to cook and serve the same as food at its table to its employes, and in refusing to give defendant's requested instruction No. 2, and in refusing to grant defendant's motion for a new trial upon these grounds, and in giving instruction No. 5 given by the court.''

Requested instruction number 2 is as follows:

''I instruct you that it does not constitute a sale or an intention to sell, for an employer to serve food to its employes in a mess-house kept for that purpose even though the employes were charged a stipulated amount for the meals eaten. In such a transaction the food served to employes is not sold but uttered. It follows from this that even if you find that the defendant did intend to use or serve this meat in question in its mess-house that would not constitute an intention to sell.''

Instruction number 5, given by the court is as follows:

''If after a full and fair consideration of all the evidence in the case you find that the defendant com-

pany was operating a mess-house or boarding house for its employes, and that for the meals furnished to its employes it made a charge; and you further find that it had in its possession, for the purpose and with the intent to serve it to its employes at their meals, decomposed and putrid meat unfit for food as charged in the information, that would constitute a keeping for sale within the statute and you should find the defendant guilty. On the other hand, if you find from the evidence that the meat in question was not kept by the defendant to be served to its boarders but was laid aside for the purpose of being thrown away, then your verdict should be for the defendant."

The defendant was charged under § 6144, Rem. Comp. Stat., which reads as follows:

"No person, firm or corporation shall, within this state, sell, offer for sale, have in his possession with intent to sell, or manufacture for sale, any article of food or drug which is adulterated or misbranded within the meaning of this act."

Section 6146, Rem. Comp. Stat., defines adulterated food as follows:

"For the purposes of this act an article shall be deemed to be adulterated: . . . In case of food: . . . Sixth.—If it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter."

The state's evidence tended to show that the Grays Harbor Commercial Company operated a sawmill at Cosmopolis, Washington, employing at that time several hundred men, and that in connection with its sawmill it operated a mill boarding house or mess house where some of its employees boarded, the men being charged ninety cents a day for their board, which was deducted from their wages.

It is contended by the appellant that it was not selling, or attempting to sell, the meat in question, and that the proof offered by the state that it intended to serve the meat to its employees at the mill boarding house or mess house constituted a complete variance between the proof and the crime of sale charged in the information. The appellant, at the close of the state's testimony, interposed a motion for a directed verdict upon this ground, which was overruled by the court and an exception allowed.

The question to be determined is, whether the serving of food by an employer to its employees at the mill boarding house constituted a sale within the meaning of § 6144, Rem. Comp. Stat.

Appellant contends that "the authorities are unanimous in holding that the serving of food to patrons by a boarding house keeper is not a sale." Appellant cites the case of *Merrill v. Hodson,* 88 Conn. 314, 91 Atl. 533, Ann. Cas. 1916D 917, L. R. A. 1915B 481. In that case the plaintiff was served unwholesome food and sued the defendant restaurant keeper for damages, upon the theory that plaintiff bought the food which she ate and that there was an implied warranty of the fitness of the food, as in other cases of sales of personal property. The court held that a restaurant keeper and an innkeeper were under the same rule, and stated as follows:

" 'In neither case does the transaction, in so far as it involves the supply of food or drink to customers, partake of the character *of a sale of goods.* . . . The customer does not become the owner of the food set before him, or of that portion which is carved for his use, or of that which finds a place upon his plate, or in side dishes set about it. No designated portion becomes his. He is privileged to eat, and that is all. The uneaten food is not his. He cannot do what he pleases with it. That which is set before him or placed

at his command is provided to enable him to satisfy his immediate wants, and for no other purpose. He may satisfy those wants; but there he must stop. He may not turn over unconsumed portions to others at his pleasure, or carry away such portions. The true essence of the transaction is service in the satisfaction of a human need or desire—ministry to a bodily want. A necessary incident of this service or ministry is the consumption of the food required. This consumption involves destruction, and nothing remains of what is consumed to which the right of property can be said to attach. Before consumption title does not pass; after consumption there remains nothing to become the subject of title. . . . The title to food never passes as a result of an ordinary transaction of supplying food to a guest.' ''

Appellant also relies upon Prof. Beale's work in Innkeepers and Hotels, § 169, and *Valeri v. Pullman Co.*, 218 Fed. 519, and certain English cases in support of its contention.

We find, however, that a majority of the American courts do not follow this rule. In the case of *Commonwealth v. Vieth*, 155 Mass. 442, 29 N. E. 577, and the case of *Commonwealth v. Warren*, 160 Mass. 533, 36 N. E. 308, the courts held that the furnishing of inferior milk with a meal is considered a sale under the statute prohibiting the sale of inferior milk.

In the case of *Commonwealth v. Miller*, 131 Pa. St. 118, 18 Atl. 938, the defendant was charged with the sale of oleomargarine instead of butter which he furnished with a meal. The statute prohibited the sale of oleomargarine as food, and the court said:

''It is plain that the exact legislative intent was to prevent the sale, and thereby prevent the use of these adulterations and admixtures as articles of food. It was the use, as food, and the frauds perpetrated upon the public in the sale, which was the mischief to be remedied; and the statute, of course, must be con-

strued with reference to the old law, the mischief, and the remedy. That the food furnished to McRae and Spence, or so much of it as they saw fit to appropriate, was sold to them, cannot be reasonably questioned. When it was set before them, it was theirs to all intents and purposes, to eat all, or a part, as they chose, subject only to the restaurateur's right to receive the price, which it is admitted was promptly paid . . . even assuming that the meal is the portion of the food taken, in the sense stated, the transaction must be regarded as a sale wholly within the purport and meaning of the statute.''

It has been almost the uniform holding of the courts that the furnishing of liquor with a meal is considered a sale under the law.

''Where statutes generally forbid sales without licenses, a restaurant keeper who furnishes liquor to his guests at their meals, the price of the meals covering the price of the liquor, is guilty of having sold liquor without a license authorizing him to make a sale of intoxicating liquors.'' Woollen & Thornton, Intoxicating Liquors, § 702.

See, also, 15 R. C. L. 351; *State v. Lotti,* 72 Vt. 115, 47 Atl. 392; *State v. Wenzel,* 72 N. H. 396, 56 Atl. 918; *Savage v. State,* 50 Tex. Cr. 199, 88 S. W. 351; *Scanlon v. City of Denver,* 38 Colo. 401, 88 Pac. 156; *Commonwealth v. Worcester,* 126 Mass. 256; *Lauer v. District of Columbia,* 11 App. Cas., D. C. 453; *Nicrosi v. State,* 52 Ala. 336.

Considering the spirit and purpose of the law, we must hold that it was the intention of the legislature to prohibit the furnishing of decomposed and contaminated food with the meals at boarding houses, and such furnishing must be regarded as a sale within the purport and meaning of the statute.

The next assignment of error is that the court erred in refusing to give the defendant's requested instructions numbers 5, 6, 10 and 11, claiming that, by refus-

ing to give these instructions, the defendant's theory of the case was not placed before the jury.

From the testimony offered on behalf of the state, Mrs. W. H. Coffin, state food inspector, on or about the 12th day of November came to Cosmopolis, Grays Harbor county, and requested permission to inspect the boarding house of the defendant company. One Mr. Cooney, an officer of the company, informed her that John Matson was in charge and that he would show her through the boarding house. Matson first objected to Mrs. Coffin making an inspection, but later told her to proceed. She found meat in the possession of the company, consisting of about nineteen or twenty pounds in chunks of about three to four pounds each. She said to Mr. Matson: "Is this meat for use?" He said: "Yes." She said: "This meat is too old." Matson picked up a piece and said: "I will show you how I trim this." He put it on a block and cut off one end. Mrs. Coffin then said: "That meat is spoiled." He stated: "We soak it in cold water and cook it with vegetables and it is fit for stew, it is all right for stew." Some samples were taken of the meat and Mr. Matson signed the seal attached thereto as a witness and left the room, but soon returned and made the statement that the meat was not being kept for use, that one Gustafson, the butcher, was in full charge of the meat and no other person had authority to determine whether or not the meat in question was to be used.

It was the theory of appellant that the meat in question was not to be served but was to be thrown away, and a number of witnesses so testified. The instruction of the court to the jury upon this theory was as favorable to appellant as the law and facts will permit, as follows:

, "If you find from the evidence that the meat in question was not kept by the defendant to be served to its boarders but was laid aside for the purpose of being thrown away then your verdict should be for the defendant."

It is next contended that the court erred in admitting, over the objection of appellant, the testimony of certain witnesses called on rebuttal to contradict the testimony of Matson, one of the witnesses of appellant, on a collateral matter. We are satisfied that the testimony on rebuttal was with reference to material facts in issue in the case.

The judgment is affirmed.

MAIN, C. J., FULLERTON, PARKER, and TOLMAN, JJ., concur.