## West *v.* Katsafanas, Appellant.

Argued April 29, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Theos E. Manos,* for appellant.—The serving of food by a restaurant keeper to a customer does not involve a sale: Nisky v. Childs Company, 135 Atlantic Reporter 805; Merrill v. Hodson, 88 Conn. 319; Valeri v. Pullman Co., 218 Federal Reporter 519.

*Charles G. Notari* of *Marshall, Braun & Notari,* for appellee, cited: Commonwealth v. Miller, 131 Pa. 118; Race v. Krum 222 N. Y. 410; Temple v. Keeler, 238 N. Y. 344.

OPINION BY BALDRIGE, J., October 10, 1932:

This appeal is from a judgment obtained by the plaintiff in an action of assumpsit brought by him to recover damages from the defendant for a breach of an implied warranty.

On October 27, 1927, the plaintiff ordered from the defendant, a restaurant keeper, a pork sandwich, pie and coffee. After eating a portion of the sandwich, which proved to be not palatable, he became so ill that it was necessary for him to be taken to the hospital, where his symptoms showed that he was suffering from poisoning.

The questions to be considered in this appeal are: (1) Was there a sale; (2) if so, was the restaurant keeper liable under an implied warranty that the food he served was fit for human consumption; (3) were consequential damages recoverable?

(1) Appellant argued that the transaction did not involve a sale of goods, and there is respectable authority for this contention. Professor Beale, in his work on Innkeepers, sec. 169, states: "As an innkeeper does not lease his rooms, so he does not sell the food he supplies to his guests ...... The title to food never passes as a result of an ordinary transaction of supplying food to a guest;" and in sec. 315 of the same work, the writer states that "so far as that

character of service performed by a restaurant keeper and an innkeeper to their respective patrons is concerned, it is the same." Lord Mansfield observes in Saunderson v. Rowles, 4 Burrows 2067, 2068, that "the analogy between the two cases of an innkeeper and a victualler is so strong that it can not be got over." In Merrill v. Hodson et al., 88 Conn. 314, 91 A. 533, where food was served at a restaurant, it was held that "in neither case [restaurant keeper and innkeeper] does the transaction, in so far as it involves the supply of food or drink to customers, partake of the character of a sale of goods. The essence of it is not an agreement for the transfer of the general property of the food or drink placed at the command of the customer for the satisfaction of his desires or actually appropriated by him in the process of appeasing his appetite or thirst. The customer does not become the owner of the food set before him."

The position that food served by a restaurant keeper is not a sale is further supported by Nisky v. Childs Co. (N. J.), 135 A. 805 (fried oysters served at a restaurant); Bigelow v. Maine Central R. R. Co., 110 Me. 108, 85 A. 396 (meals served in a dining room); Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253 (oyster stew served in a restaurant); Valeri v. Pullman Co. (N. Y. D. C.), 218 Fed. 519 (food served in a buffet car); see also Travis v. Louisville & N. R. R. Co., 183 Ala. 415, 62 So. 851; Farrell v. Manhattan Market Co., 198 Mass. 271, 84 N. E. 481.

The greater weight of authority, however, takes the opposite view. It has been held that if one buys a meal which includes intoxicating liquor, it is a purchase of the drink (Com. v. Worcester, 126 Mass. 256; State v. Lotti, 72 Vt. 115, 47 A. 392); likewise a glass of milk purchased with a meal: Com. v. Warren, 160 Mass. 533, 36 N. E. 308. To the same effect are People v. Clair, 221 N. Y. 108, 116 N. E. 868, and

Com. v. Phoenix Hotel Co., 157 Ky. 180, 162 S. W. 823.

Our Supreme Court held in Com. v. Miller, 131 Pa. 118, 18 A. 938, that a restaurant keeper, who served oleomargine with a meal, sold it in violation of the terms of the statute prohibiting the sale of oleomargarine. Professor Williston, in his work on Sales, vol. 1, par. 242-b, states that the question of liability of a restaurant keeper is supposed to depend on whether he makes a sale to the customer of the injurious food. Adopting the language of that distinguished writer: "It is indeed true that if the transaction amounts to a sale the numerous authorities referred to in the preceding section establish liability. On excellent authority, however, it is held that the title to food served by an innkeeper never passes. Whether this analogy holds good in a restaurant where a customer pays not for a meal, but for a definite portion of food, may perhaps be questioned. May not one who secures and pays for a piece of pie at an 'automat' or luncheon spa take it from the plate and walk off with it without wrong? Whether or not because the transaction has been held not to be a sale, it has generally been assumed that the liability of a restaurant keeper is based only on willful fault or negligence, and many cases have been brought on this assumption. In most of them no contention was made by the plaintiff that the defendant was absolutely liable as a warrantor, but in a few recent cases the claim was made on behalf of the plaintiff and denied by the court. The Massachusetts Supreme Court, and the Appellate Division of the New York Supreme Court, however, have recently upheld such a claim, and with good reason. Even though the transaction is not a sale, every argument for implying a warranty in the sale of food is applicable with even greater force to the serving of food to a guest or customer

at an inn or restaurant." See also Greenwood v. Thompson Co., 218 Ill. App. 371; Heise v. Gillette et al., 83 Ind. App. 551, 149 N. E. 182; Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N. E. 407; Temple v. Keeler, 238 N. Y. 344, 144 N. E. 635.

Undoubtedly, if one purchases a sandwich, or piece of pie, or other food, to be carried away and eaten, it constitutes a sale and the seller is liable. To conclude that he is not subject to pay damages if the food is eaten on the premises, but if carried to the pavement and there consumed, he is liable, is inconsistent and not in accord with sound reasoning. The evil consequences in the one case are the same as in the other. To attempt to establish a distinction as to liability is not practicable.

(2) Concluding as we do that the transaction was a sale, an implied warranty exists. An action does not rest alone upon the negligence of the vendor, requiring the plaintiff to proceed in tort rather than rely upon an implied contract. Blackstone, in the 3d volume of his Commentaries, p. 165, stated: "In contracts for provisions it is always implied that they are wholesome." See also Chitty on Contracts, 6th ed. 399. It has been expressly ruled by our Supreme Court that where there is a sale of articles of food, there is an implied warranty that the food is wholesome and fit for the purposes intended, irrespective of the seller's knowledge of disease or defects therein: Catani v. Swift Co., 251 Pa. 52. In the recent case of Nock v. Coca Cola Bottling Works, 102 Pa. Superior Ct. 515, which was an action of assumpsit, based on breach of an implied warranty, the plaintiff had purchased a bottle of coca cola which had a worm in it. The action was of a mixed character, containing elements of tort and contract, wherein we said: "We think the sounder reasoning is in support of the theory that the sale of food or beverages impliedly

warrants that it shall be free of a foreign matter which may be injurious to the well-being of the consumer. Nor do we see any just reason, from a public policy standpoint, as the health or human life may be involved, why a sale of food or beverage intended for human consumption should not carry with it an implied warranty that it is suitable and wholesome. Our Sales Act of May 19, 1915, P. L. 543, Section 15, provides that an implied warranty as to the quality or fitness for a particlar purpose may be annexed by the usage of trade." See also Race v. Krum, 222 N. Y. 410, 118 N. E. 853; Temple v. Keeler, supra; Barrington v. Hotel Astor, 184 N. Y. App. 317; Leahy v. Essex Co., 148 N. Y. Supp. 1063; Bark v. Dixon et al., 115 Minn. 172, 131 N. W. 1078; Williston on the law of Sales, vol. 1, sec. 237; Friend v. Childs Dining Car Co., supra, wherein a large number of cases are cited.

(3) The remaining question to be disposed of is whether the plaintiff was entitled to recover consequential damages. The law places an obligation upon the seller to see that the articles are fit for the purposes for which they are intended. There can be no doubt, of course, that the food purchased was to be consumed. This places a heavy burden upon the vendor of food; but public policy, as well as public health, demands that great care be exercised by one who has the opportunity of examining and knowing the quality of food sold, which the purchaser may not determine. If the food is unfit for consumption, and damages result therefrom, they ought to be placed, not upon one who has had no opportunity of determining its condition, but rather upon the one who has had means of informing himself of the condition of the food. The Sales Act of May 19, 1915, P. L. 543, 563, provides as follows: "Sixth. The measure of damages for breach of warranty is the loss directly and

naturally resulting, in the ordinary course of events, from the breach of warranty." Consequential damages have been frequently recovered for breach of implied warranty: Griffin v. Metal Products Co., 264 Pa. 254; Rex Auto Exchange v. Hoffman, 84 Pa. Superior Ct. 369; Budd v. Mutchler, 98 Pa. Superior Ct. 420. Professor Williston, in his treatise on Sales, 2d ed., vol. 2, sec. 614, states that "unwholesome food sold to human beings under an expressed or implied contract ...... subjects the seller to responsibility for the consequences."

There can be no question that the plaintiff's suffering was the natural and direct result of eating the contaminated food purchased from the defendant.

Judgment affirmed.