No. 32,534

MYRTLE STANFIELD, a Minor, by ANNA STANFIELD, her Mother and Next Friend, *Appellee*, v. THE F. W. WOOLWORTH COMPANY, *Appellant*.

(53 P. 2d 878)

Opinion filed January 25, 1936.

*Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe* and *Wayne Coulson*, all of Wichita, for the appellant.

*Clarence R. Sowers*, of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries resulting from food poisoning. Plaintiff recovered judgment for $2,900. Defendant has appealed.

The pertinent facts may be stated as follows: Plaintiff, a girl twenty years of age, was in the employ of defendant as a saleswoman in its retail store at Wichita. Among other departments of business conducted by defendant at its store was a restaurant or lunch counter. About 4:30 o'clock the afternoon of July 3, 1934, plaintiff went to defendant's lunch counter and ordered and paid for a ham-salad sandwich and a glass of Coca-Cola, which were delivered to her. She ate the sandwich and drank the Coca-Cola

and in about half an hour became violently ill. She was taken to a hospital, where she was found to be suffering from food poisoning. There is evidence justifying the jury in concluding the food poisoning was the result of eating the sandwich. In her petition plaintiff alleged defendant's servants and employees manufactured the sandwich by preparing and assembling the ham, relish, mayonnaise, and other ingredients which went into it; that defendant sold the ham-salad sandwich to plaintiff upon the implied representation and guaranty that the same was wholesome and fit for immediate consumption; that in fact it was unfit and unwholesome for immediate human consumption, the purpose for which it was sold to plaintiff.

In her evidence plaintiff made no effort to show specific acts of negligence on the part of defendant, its agents, servants, or employees in the selection of materials or in the manner it prepared and assembled them in the making of the ham-salad sandwich.

Appellant's principal point in this court is that it is not liable to plaintiff on an implied warranty that the sandwich was suitable for human consumption; that it could be liable only upon the grounds of negligence in the selection of materials used and in the manner in which they were prepared and assembled, and since no such negligence was either alleged or proved its demurrer to the evidence should have been sustained. There is authority for this view. (*F. W. Woolworth Co. v. Wilson*, 74 F. 2d 439; *Kenney v. Wong Len*, 81 N. H. 427, 128 Atl. 343; *Lynch v. Hotel Bond Co.*, 117 Conn. 128, 167 Atl. 99; *McCarley v. Wood Drugs*, 228 Ala. 226, 153 So. 446; *Rowe v. Louisville, Etc., R. Co.*, 29 Ga. App. 151, 113 S. E. 823; *Bigelow v. Maine Central Railroad Company*, 110 Maine 105, 85 Atl. 396; *Roseberry v. Wachter*, 33 Del. 253, 133 Atl. 273; *Nisky v. Childs Co.*, 103 N. J. L. 464, 135 Atl. 805, 50 A. L. R. 227.)

The reasoning of these authorities may be best set forth in a quotation from *Nisky v. Childs Co.*, as follows:

"At common law, in the absence of express warranty or representation from which a warranty could be inferred, the mere sale of goods without more did not warrant the quality of the article sold. *Beninger v. Corwin*, 24 N. J. L. 257, and such is the universal rule. (35 Cyc. 397.) When, however, the seller is informed by the buyer of the purposes for which the goods are purchased, there is an implied warranty that the thing sold is fit for the intended purpose. This also is a rule of which there is universal acceptance. (35 Cyc. 399, and cases cited.) . . .

"From the earliest times, however, a distinction has been drawn between a sale of an article and the furnishing of food at an eating house, hotel or

restaurant; the latter partaking rather of the character of service, in which case the standard of liability is the failure to use that reasonable care which the circumstances require. As was said many years ago in *Parker v. Flint*, reported in 12 Mod. 254, 'an inkeeper . . . does not sell but utters his provisions,' and by Professor Beale, in his Treatise on Innkeepers, section 169: 'As an innkeeper does not lease his room, he does not sell the food he supplies to his guests. It is his duty to supply such food as the guest needs, and the corresponding right of the guest to consume the food he needs and to take no more. Having finished his meal he has no right to take food from the table, even the uneaten portion of the food supplied him. Nor can he claim a certain portion of the food as his own to be handed over to another in case he chooses not to consume it himself.'

"The authorities distinguishing the transaction from a sale recognize that while the food served constitutes, of course, an essential part, yet, serving it cannot be regarded as a sale of goods, and this we think the common understanding. A customer at an eating place seeks not to make a purchase, but to be served with food to such reasonable extent as his present needs require. With the service go a place, more or less attractive, in which to eat it, a table, dishes, linen, silver, waiters and sometimes music as an accompaniment—all tending to render more agreeable and palatable that which he eats. The food he obtains is then and there consumed; he does not eat the portion he can comfortably devour and place the remainder in his pockets or other receptable, to be stored away for future needs. So, one who purchases a steamship ticket, or one who registers at a hotel, does not conceive the transaction as a sale of goods when, as part of his passage in the one case, and as a guest in the other, he is supplied with meals; nor does one who enters a restaurant to be supplied with a meal or any portion thereof so regard the supplying of his food. This attitude of the public mind is indicated by the familiar signs, 'Meals Served Here,' 'Dinners Served Here,' and the like." (pp. 466, 467.)

In some of the cases holding the action must be predicated upon negligence it is held the negligence may be shown by circumstantial evidence. (*Corin v. S. S. Kresge Co.*, 110 N. J. L. 378, 166 Alt. 291; *Stell v. Townsends C. G. Fruits*, 138 Cal. App. 777, 28 P. 2d 1077, and cases there cited.) In a few cases it is stated that the doctrine of *res ipsa loquitur* is applicable. (*Costello v. Morrison Cafeteria Co. of La., Inc.*, 18 La. App. 40, 135 So. 245; *Gainesville Coca-Cola Bottling Co. v. Stewart*, 51 Ga. App. 102, 179 S. E. 734.) Some of the cases predicated upon the view that title does not pass to the food furnished because the patron does not have authority to take away with him the part not consumed, nevertheless recognize that title does pass to that portion of the food which is consumed by the patron. (*F. W. Woolworth Co. v. Wilson*, supra.) One is tempted to inquire, since the portion which is not consumed is not the portion which caused injury, if any, to the patron, why is it of any consequence whether title passed to that portion of it?

There is another line of authorities holding that one who, for compensation, supplies food to another for immediate consumption impliedly warrants that the food is wholesome, and if it proves not to be, and injury results from its consumption, the person injured may maintain an action on the implied warranty, without alleging or proving negligence of defendant. (*Friend v. Childs Dining Hall Co.,* 231 Mass. 65, 120 N. E. 407; *Temple v. Keeler,* 238 N. Y. 344, 144 N. E. 635; *Greenwood v. John R. Thompson Co.,* 213 Ill. App. 371; *Heise v. Gillette,* 83 Ind. App. 551, 149 N. E. 182; *Doyle v. Fuerst & Kraemer,* 129 La. 838, 56 So. 906; *Smith v. Carlos,* 215 Mo. App. 488, 247 S. W. 468; *S. H. Kress & Co. v. Ferguson* [Tex. Civ. App.], 60 S. W. 2d 817; *Clark Restaurant Co. v. Simmons,* 29 Ohio App. 220, 163 N. E. 210; *West v. Katsafanas,* 107 Pa. Superior Ct. 118, 162 Atl. 685.)

Neither of the above lists is intended to be complete. Most of the cases bearing on the subject have been collected in the annotations in 5 A. L. R. 1115; 35 A. L. R. 921; 50 A. L. R. 231; 98 A. L. R. 687. They have been collected also in "Negligence with Food—Drink—Drugs," by Turner, pages 126 to 135, and in American Digest under "Foods," § 25. See, also, 26 C. J. 783 *et seq.;* 11 R. C. L. 1118 *et seq.,* and authorities cited.

In the cases holding the action may be predicated upon implied warranty the reasons given may be classified as follows: *First,* In the sale of food there appears always to have been an implied warranty that the food was wholesome and fit for the use for which it was purchased. In 11 R. C. L. 1120 it is said:

"There have been expressions of this character since the earliest times. A case in Year Book 9 Hen. VI 53, may be taken as an example. It is there said: 'If I come into a tavern to eat, and he gives and sells to me beer and flesh which are corrupt, by which I am put into a great sickness, I shall have against him my action on the case clearly, even although he made no guaranty to me.' "

In *Roswel v. Vaughan,* 2 Cro. Jac. 196, 197, it was said:

"But if a man sell victuals which is corrupt, without warranty, an action lies, because it is against the commonwealth."

In *Wren v. Holt,* reported in The Times of November 18, 1901 (see 1 K. B. [1903] 610), defendant was held liable, upon an implied warranty, for damages plaintiff sustained by drinking beer sold him by defendant over the counter and which contained arsenic by which plaintiff was poisoned.

In 3 Black. Comm. (15th ed.) 166, it is said:

"In contracts for provisions, it is always implied that they are wholesome; and if they be not, the same remedy [an action on the case] may be had."

In Ames' Lectures on Legal History, p. 137, it is said:

"A taverner or vintner was bound as such to sell wholesome food and drink." (Citing early authorities.)

In *Burnby v. Ballett*, 16 M. & W. 644, the early authorities on the question are reviewed and the liability of a victualer, taverner, or innkeeper, on an implied warranty of wholesomeness of the food, was recognized, although it was not applied in that case where one farmer had sold a dressed hog to another, he having simply transferred his right to purchase it from the butcher.

In *Wallis v. Russell*, 2 Irish Rep. (1902) 585, the early cases are reviewed and compared with the implied warranty of subsection 1 of section 14 of the sale of goods act of 1893, and it was held that either under the act or the earlier cases on the sale of food there was an implied warranty of its fitness for human consumption.

*Second:* Where statutes forbid the sale of intoxicating liquors, or forbid their sale without a license, it has been repeatedly held that a restaurant keeper who furnishes liquor to his guests at their meals, the price of the meal covering the price of the liquor, is guilty of having sold the liquor. (*State v. Lotti*, 72 Vt. 115, 47 Atl. 392; *State v. Wenzel*, 72 N. H. 396, 56 Atl. 918; *Savage v. State*, 50 Tex. Crim. Rep. 199, 88 S. W. 351; *Scanlon v. City of Denver*, 38 Colo. 401, 88 Pac. 156; *Commonwealth v. Worcester*, 126 Mass. 256; *Lauer v. Dist. of Columbia*, 11 App. D. C. 453; *Nicrosi v. State*, 52 Ala. 336.)

Where there was a statute forbidding the sale of adulterated, filthy, decomposed, or putrid food it was held, in *State v. Grays Harbor Com. Co.*, 124 Wash. 227, 214 Pac. 13, that the furnishing of such food by an employer with the meals served to his employees at his boarding house, where a charge was made by deducting the board from wages, constituted a sale.

In *Commonwealth v. Miller*, 131 Pa. St. 118, 18 Atl. 936, construing a statute prohibiting the sale of oleomargarine as a substitute for butter, it was held the serving of oleomargarine with a regular meal at a public restaurant constituted a sale.

In *People v. Clair*, 221 N. Y. 108, 116 N. E. 868, it was held the sale of prohibited game as a part of a table d'hote meal is necessarily a sale of the game.

Under a statute prohibiting the exposure for sale of quail between certain dates it was held, in *Commonwealth v. Phoenix Hotel Co.,* 157 Ky. 180, 162 S. W. 823, that the serving of quail for compensation by a hotel to its guests was an "exposing for sale" within the meaning of the statute. In the opinion it was said:

"The guest at the hotel or restaurant who is served with quail for compensation as certainly purchases it and the proprietor of the hotel or restaurant as certainly exposes it for sale and sells it as if it were purchased for compensation from a dealer who had it for sale and was carried home by the purchaser to be served on his table." (p. 185.)

In *Gibson v. State,* 214 Ala. 38, 106 So. 231, it was held the feeding of mill oats for hire by a veterinary to horses and mules belonging to the public was a sale of the mill oats.

Construing a statute making it an offense to sell milk not of standard quality, it was held, in *Commonwealth v. Warren,* 160 Mass. 533, 36 N. E. 308, that the delivery of milk to the purchaser of a table d'hote breakfast, as a part of such breakfast, is as much a sale of the milk, within the statute, as if a special price had been put on it, or it had been bought and paid for by itself.

By what reason can it be said that furnishing, as a part of a meal, articles the sale of which is prohibited, constitutes a sale of such articles, but other articles furnished as a part of the meal are not sold?

*Third:* There is also a question of public policy involved in the preservation of the life and health of our citizens. This is indicated by the many statutes in this state with reference to food and drugs (R. S. 65-601 *et seq.*); of milk and dairy products (R. S. 1933 Supp. 65-701 *et seq.*); and provisions for inspecting hotels (R. S. 75-1801 *et seq.;* R. S. 1933 Supp. 75-20b01 *et seq.*). One purpose of these statutes is that only wholesome food be sold, or served, for human consumption, recognizing that any other kind is detrimental to health and may cause death. Similar statutes may be found in all the states. In this connection we note that a restaurateur, hotel keeper, or boardinghouse keeper may recover damages from one from whom he has purchased food to be sold or served to his patrons if the same proves to be unwholesome, and the action may be predicated upon the breach of implied warranty of its fitness. (*Hawkins v. Jamrog,* 277 Mass. 540, 179 N. E. 224; *Mazetti v. Armour & Co.,* 75 Wash. 622, 135 Pac. 633.)

Our own cases have not dealt directly with the question here

presented, namely, whether one situated as the plaintiff in this case could maintain the action upon an implied warranty of the wholesomeness of the food without allegations or proof of negligence of the defendant. In *Malone v. Jones*, 91 Kan. 815, 139 Pac. 387, 92 Kan. 708, 142 Pac. 274, plaintiff alleged negligence in the selection and preparation of food served to farm hands. Naturally, where specific negligence is alleged in those particulars, and injury results therefrom, an action can be maintained. There are many similar cases in other jurisdictions. There was no discussion in the case cited on the point here involved. In the case of *Parks v. Pie Co.*, 93 Kan. 334, 144 Pac. 202, the question of the liability of a dealer or manufacturer was before the court. It was there held that they would be liable if the food sold by them proved to be unwholesome and injury resulted. In the opinion it was said:

"A manufacturer or dealer who puts human food upon the market for sale or for immediate consumption does so upon an implied representation that it is wholesome for human consumption. Practically, he must know it is fit or take the consequences if it proves destructive." (p. 337.)

The question arose again in *Challis v. Hartloff*, 133 Kan. 221, 299 Pac. 586, 136 Kan. 823, 18 P. 2d 199, where the authorities were reviewed at length, and it was held the action might be maintained against a dealer or broker who sold poisonous flour to be used for food, and it was specifically held that the action was one for a breach of an implied warranty and not an action in tort. We see no difference in the principle applied in those cases and the one which should apply here. In this case plaintiff purchased and paid for a ham-salad sandwich, which she was privileged to eat at the counter where it was purchased, or take away and eat. All the reasons applied in the cases last cited which would hold a dealer liable for the sale of unwholesome food for human consumption are applicable here. We hold the transaction was a sale, and that there was an implied warranty of the wholesomeness of the food.

Furthermore, we would be constrained to hold in this case that defendant impliedly warranted the wholesomeness of the sandwich sold or served to plaintiff irrespective of whether the transaction in all of its aspects should be treated as a sale. "A sale is not the only transaction in which a warranty may be implied." (Williston on Contracts, § 996a; 1 Williston on Sales, 2d ed., § 242b.) Certainly some contractual relation exists between one who, for compensation, sells or serves to another food for immediate consumption.

An implied warranty arises from the presumed intention of the parties. It is an inherent condition or term of the contract without regard to what name may be given to the contract. Presumably people go to a hotel, restaurant, or other eating establishment for food suitable for human consumption, and presumably the one in charge of such establishment undertakes to furnish such food. We regard the circumstances as being a sufficient basis to hold that there was an implied warranty on the part of defendant that the sandwich in question was suitable for human consumption. (See 55 C. J. 715; 24 R. C. L. 178; 66 U. S. Law Rev. 581, 587; 27 Yale Law Journal 1069.)

There is not much else in this lawsuit. As previously stated, there was evidence justifying the jury in concluding that the food poisoning suffered by plaintiff was caused by her eating the sandwich purchased from defendant. There is also sufficient evidence of her injuries to sustain the amount of the verdict. Appellant argues the verdict is excessive, but this is predicated upon the fact that it is for the exact amount sued for, and appellant argues this of itself shows bias and prejudice on the part of the jury. This does not necessarily follow. It is rather obvious plaintiff named in her petition an amount of damages that would prevent the removal of the case to the federal court, preferring for some reason to try it in the state court. But whether this observation is correct or not is immaterial. It would be well for those bringing actions for damages to claim reasonable sums in their petitions rather than exaggerated amounts, as so many of them do. The fact that the amount of damage claimed by plaintiff was found by the jury to be reasonable is no evidence in this case of bias or prejudice on the part of the jury.

We find no error in the record. The judgment of the court below is affirmed.