2016 NOV -7 AM 8: 46



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a regional transit authority, dba SOUND TRANSIT, and CITY OF SEATTLE, | No. 75372-0-I |
| | DIVISION ONE |
| Respondents, | |
| v. | |
| STERNOFF L.P., a Washington limited partnership; | |
| | UNPUBLISHED OPINION |
| Appellant, | |
| | FILED: November 7, 2016 |
| JPMORGAN CHASE BANK, N.A.; W. STERNOFF LLC, a Washington limited liability company dba BODYGLIDE; KING COUNTY, a Washington municipal corporation; and ALL UNKNOWN OWNERS and UNKNOWN TENANTS, | |
| Defendants. | |

BECKER, J. — This is an appeal from the determination of public use and necessity authorizing Central Puget Sound Regional Transit Authority (Sound Transit) to move forward with condemnation proceedings against appellant's property. Because the Sound Transit board did not engage in arbitrary and capricious conduct when it approved condemnation and the board's resolution

confers authority to condemn the property for a city of Bellevue (City) street widening project, we affirm.

FACTS

In 1992, the Washington State legislature authorized counties in the Puget Sound area to create a transportation agency "for planning and implementing a high capacity transportation system within that region." RCW 81.112.010. Voters later approved a ballot measure creating Sound Transit. Sound Transit has already completed light rail projects in Seattle and Tacoma. In 2008, voters approved the Sound Transit 2 plan to extend the existing light rail system to cities east of Seattle, including Bellevue.

For the last few years, Sound Transit has been in the final planning and design stages of the East Link project. In July 2011, Sound Transit selected the route and station locations by adopting Resolution R2011-10.

Appellant Sternoff LP is a business owned by William R. Sternoff. Sternoff owns property along the East Link route located at 1750 124th Avenue Northeast in Bellevue's Bel-Red area. There are two buildings on the property, each including office space and warehouse space. The only means of accessing the property are two driveways on 124th Avenue. Sternoff's tenants require regular access to conduct business, including to ship and receive goods. One tenant in particular, a medical device supplier, requires round-the-clock access.

The East Link alignment will run along and through the south portion of Sternoff's property. The construction plans for 124th Avenue Northeast include building Sound Transit's light rail trackway, as well as the City's project of

2

building a bridge over the trackway. The City also has a long-standing plan to widen the avenue to provide increased mobility and safety by creating a five lane section with landscape zones and sidewalks. The new bridge will be constructed to accommodate the wider roadway.

In December 2011, Sternoff entered into an agreement with the City that permitted survey work on the property related to the City's plans to improve 124th Avenue. Sternoff entered into another access agreement in April 2013, this time with Sound Transit. The agreement permitted Sound Transit to conduct surveys on the property related to East Link construction. Both agreements guaranteed that Sternoff and his lessees would have largely unimpeded access to the property during the survey work. The City assured Sternoff that its representatives "will not block access to the business park or buildings or impede access around the buildings." Sound Transit assured Sternoff that "during and after the expiration of the Term, except as needed and temporarily, Sound Transit will not block access to the business park or buildings or impede access around the buildings needed for tenants, clients and deliveries, and will not otherwise interfere with the day to day business operations of the Property."

In September 2013, Sound Transit began the process of condemning properties for East Link construction. At a meeting of the Capital Committee, Sound Transit's property director presented a proposed resolution, R2013-21, which identified 60 commercial properties as "necessary for the construction and permanent location of the East Link Project." This list included Sternoff's property. The resolution authorized condemnation proceedings "to acquire all, or

any portion thereof, of the properties and property rights." The committee voted to recommend that Sound Transit's board pass the resolution.

The board adopted the resolution as part of its consent agenda during a meeting on September 26, 2013. Sound Transit provided notice of the meeting to affected property owners, as required per RCW 8.25.290.

In May 2015, Sound Transit and the City adopted an amended Memorandum of Understanding, superseding a previous version adopted in 2011. The previous version is not designated as part of the appellate record. The 2015 memorandum states that pursuant to the 2011 agreement, "the Parties engaged in a collaborative process for design and development of the East Link Project" and worked to "identify projects to be completed jointly for reduced impacts to the public, and overall cost savings and efficiencies." In a section titled "Project Coordination," under a subsection titled "Shared Cost Agreement," the memorandum explains that Sound Transit and the City coordinated their projects on 124th Avenue:

> The Project[1] is designed to cross under two existing roadways, 120th Avenue NE and 124th Avenue NE, which will require elevating the profile of the roadway as identified in Exhibit M, Section E. The City has identified 120th Ave NE, between NE 12th Street and NE 16th Street (CIP Plan Project PW-R-168), and 124th Ave NE, between NE Spring Boulevard and NE 18th Street (CIP Plan Project PW-R-166) for widening and other improvements. The City and Sound Transit desire to coordinate and share the costs for the design, right-of-way acquisition and construction of the two projects to improve efficiencies and reduce costs. Upon execution of this MOU, the Parties shall enter into the Funding, Right-of-Way

---

[1] The memorandum defines "Project" as "the segments of the Light Rail Transit System in the City of Bellevue as described in Exhibit C-1 (Project Description), attached and incorporated herein, and as may be modified as described in this MOU [Memorandum of Understanding]."

4

Acquisition and Construction Administration Agreement for Roadway and East Link Project Improvements at 120th Ave NE and 124th Ave NE attached hereto as Exhibit N and incorporated herein by this reference.

In April 2016, Sound Transit filed a Petition in Eminent Domain against Sternoff in King County Superior Court. Sound Transit simultaneously filed a motion for a finding of public use and necessity. The petition states that certain real property rights "must be acquired for purposes of Petitioner's Link light rail project." To construct the East Link, "certain real property and real property rights are necessary for the City of Bellevue's Bel-Red Transportation improvements, which includes widening 124th Ave. NE." The petition states that the 2015 Memorandum of Understanding between Sound Transit and the City "requires certain real property and real property rights for the 124th Ave NE project."

The Sound Transit board authorized condemnation to acquire "all, or any portion" of Sternoff's property when it adopted R2013-21. The petition did not seek to take the whole property; rather, it identified 10 interests in portions of Sternoff's property for condemnation. These included permanent fee and easement interests, as well as temporary construction easements, as spelled out in legal descriptions attached to the petition.

On June 6, 2016, the court held a hearing on public use and necessity. See RCW 8.12.090; RCW 8.12.100. Sternoff argued the petition should be dismissed entirely because Sound Transit's board acted arbitrarily and capriciously in adopting R2013-21 or, in the alternative, Sound Transit should not be permitted to acquire property for the City's street widening project. On June

5

7, 2016, the trial court issued findings of fact, conclusions of law, and an Order and Judgment Adjudicating Public Use and Necessity.

The court found:

> 7. The Condemned Property is necessary to and will be used for a public purpose—locating, constructing, operating and maintaining the Project.[2]
>
> 8. Petitioner has determined that the construction of the Project will serve a public purpose, is necessary for the public interest, and that the Condemned Property is necessary for this purpose. The Respondents have been served with notice and a copy of the Petition.
>
> . . . .
>
> 10. There was no fraud, actual or constructive, no abuse of power, bad faith, or arbitrary and capricious conduct by Sound Transit.

The court concluded:

> 5. The taking and damaging of lands, properties and property rights in order to locate, construct, operate and maintain the Project is for a public use.
>
> 6. The public interest requires the proposed use.
>
> 7. Appropriation of the Condemned Property is necessary for the proposed use.
>
> 8. Petitioner is entitled to the issuance of an order finding public use and necessity for the taking of the Condemned Property.

Sternoff appealed. Sound Transit filed a motion for accelerated review, asserting that possession of Sternoff's property in 2016 is required to keep the East Link project on schedule and on budget. We granted accelerated review.

Sternoff assigns error to findings 7, 8, and 10. He argues that because these findings are erroneous, conclusions 5 through 8 are not adequately supported by the court's findings.

---

[2] Defined by the petition and by the order as "the East Link Extension and its related facilities."

We will not disturb findings that are supported by substantial evidence. Cent. Puget Sound Reg'l Transit Auth. v. Miller, 156 Wn.2d 403, 419, 128 P.3d 588 (2006). Substantial evidence is evidence that would persuade a fair-minded, rational person of the truth of the finding, viewed in the light most favorable to the respondent. Miller, 156 Wn.2d at 419.

## BOARD ACTION

Sternoff contends the Sound Transit board engaged in arbitrary and capricious conduct when adopting R2013-21, the resolution authorizing condemnation proceedings.

The government must exercise its power of eminent domain through lawful procedures. Miller, 156 Wn.2d at 410. The statute governing regional transit authorities provides that the "right of eminent domain shall be exercised by an authority in the same manner and by the same procedure as or may be provided by law for cities of the first class, except insofar as such laws may be inconsistent with the provisions of this chapter." RCW 81.112.080(2). A city authority must first pass an ordinance providing that it seeks to condemn property for public improvements "which will require that property be taken or damaged for public use." RCW 8.12.050. Once the ordinance is passed, the condemning authority must file a petition in superior court. RCW 8.12.050.

The next step is for a court to adjudicate public use and necessity. Miller, 156 Wn.2d at 410. The court must determine (1) whether the proposed use is really public, (2) does the public interest require it, and (3) is the property to be acquired necessary for that purpose. City of Bellevue v. Pine Forest Props., Inc.,

185 Wn. App. 244, 259, 340 P.3d 938 (2014), review denied, 183 Wn.2d 1016 (2015). The latter two findings address necessity. Pine Forest, 185 Wn. App. at 259, citing In re City of Seattle, 104 Wn.2d 621, 623, 707 P.2d 1348 (1985). It is undisputed that the East Link project constitutes a public use. See HTK Mgmt., LLC v. Seattle Popular Monorail Auth., 155 Wn.2d 612, 630, 121 P.3d 1166 (2005). Sternoff's challenges relate to the necessity issue.

"Necessity" in the eminent domain context does not mean absolute necessity, but rather that a project will fulfill a genuine need and appropriately facilitate a public use. Pub. Util. Dist. of Grant County No. 2 v. N. Am. Foreign Trade Zone Indus., LLC, 159 Wn.2d 555, 576, 151 P.3d 176 (2007); Miller, 156 Wn.2d at 421. A party challenging an agency's finding that necessity exists must demonstrate actual fraud, or arbitrary and capricious conduct sufficient to constitute constructive fraud. Miller, 156 Wn.2d at 417; Pine Forest, 185 Wn. App. at 262. Arbitrary and capricious conduct is willful and unreasoning action, without consideration and regard for facts or circumstances. City of Tacoma v. Welcker, 65 Wn.2d 677, 684, 399 P.2d 330 (1965). When reasonable minds can differ regarding whether the record supports a trial court's finding of necessity, we will not disturb the decision of a condemning authority so long as it was reached honestly, fairly, and upon due consideration of the facts and circumstances. Pine Forest, 185 Wn. App. at 263. Our Supreme Court has observed that it has seldom "'found that a condemning authority has abused its trust in making a declaration of public necessity. This should not be surprising,

8

for it is not to be presumed that such abuses often occur.'" Miller, 156 Wn.2d at 412, quoting State v. Brannon, 85 Wn.2d 64, 68, 530 P.2d 322 (1975).

It is undisputed that Sound Transit is a government agency that can lawfully exercise eminent domain power pursuant to RCW 81.112.080(2). Sound Transit concluded it was necessary to exercise this authority when the board adopted R2013-21:

> The Sound Transit Board deems the East Link Extension to be a public use for a public purpose. The Board deems it necessary and in the best interests of the citizens residing within Sound Transit's boundaries to acquire the property identified in Exhibit A as being necessary for the construction, operation, and permanent location of the East Link Extension, parties to be paid relocation and re-establishment costs associated with displacements from the properties.

Sternoff argues the board's conduct was arbitrary and capricious because the board appears not to have considered the access agreements when deciding to adopt R2013-21. He asserts that Sound Transit staff "never disclosed to the Board the Sound Transit Access Agreement" and concludes the "Access Agreements and related negotiations and assurances are exactly the 'facts and circumstances' that Sound Transit was obligated to evaluate in reaching an honest, fair and reasoned decision regarding the 'necessity' of the Sternoff Property." The agreement states that Sound Transit will not block Sternoff's access during or after the survey work.

An agency cannot contract away its power of eminent domain. State ex rel. Devonshire v. Superior Court, 70 Wn.2d 630, 637, 424 P.2d 913 (1967). Under this principle, Sound Transit's agreement with Sternoff did not control the board's decision whether to exercise its eminent domain power with respect to

9

his property. Sternoff, aware of this principle, does not argue that Sound Transit was estopped from exercising its condemnation authority based on the contract. Rather, he contends the agreement contained information relevant to the East Link project and the board's failure to consider this information renders its conduct arbitrary and capricious. Sternoff cites no authority for the proposition that a condemning authority's failure to consider access agreements is relevant to the arbitrary and capricious inquiry, let alone dispositive. He had notice of the meeting at which R2013-21 would be decided and thus had the opportunity to present these issues to the board. He was not entitled to rely on the board to consider them otherwise.

Sternoff suggests that the short amount of time the board spent considering R2013-21 renders its decision arbitrary and capricious. Sternoff contends the board "rubber stamped" the resolution. The board adopted the resolution during a consent agenda. According to Sternoff, "the total Board consideration of R2013-21 amounted to four minutes of time—to take 60 properties." Sternoff cites no authority for his position that the amount of time devoted to a topic at a hearing is relevant to determining whether an agency's decision was arbitrary and capricious. Legislative bodies routinely adopt resolutions during consent agendas. Adoption on a consent agenda does not mean that the decisions included were arbitrary or uninformed.

The board's adoption of R2013-21 substantially supports the finding that Sound Transit "determined that the construction of the Project will serve a public purpose, is necessary for the public interest, and that the Condemned Property is

10

necessary for this purpose." The resolution also supports the finding that the "Condemned Property is necessary to and will be used for a public purpose— locating, constructing, operating and maintaining the Project." The trial court was entitled to rely on Sound Transit's determination of necessity in the absence of proof of actual or constructive fraud. Miller, 156 Wn.2d at 417. Sound Transit supported its eminent domain petition with evidence demonstrating its decision to condemn was based on considerations regarding the East Link's alignment and trackway. Viewing this evidence in the light most favorable to Sound Transit, we affirm the finding that there was no arbitrary and capricious conduct by Sound Transit.

## STREET WIDENING PROJECT

Sternoff contends condemnation of his property for the City's street widening project is unconstitutional because there has never been an explicit finding by the City or Sound Transit that his property is necessary for this project.

The petition states that to construct the East Link extension and its related facilities, Sound Transit seeks to acquire portions of Sternoff's property deemed necessary for the City's project of widening the roadway. The petition mentions the Memorandum of Understanding by which the City and Sound Transit agreed to a collaborative process:

> Certain real property and real property rights must be acquired for purposes of Petitioner's Light rail project in order to permanently locate, construct, operate and maintain the East Link Extension and its related facilities (the "Project"). In order to construct the Project, certain real property and real property rights are necessary for the City of Bellevue's Bel-Red Transportation improvements, which includes widening 124th Ave NE. As part of the agreement to expand light rail to Bellevue, Petitioner and the City of Bellevue

11

entered into a Memorandum of Understanding for Intergovernmental Cooperation for the East Link Project which requires certain real property and real property rights for the 124th Ave NE project.

The order identifies some of Sternoff's property interests being acquired as "COB" (city of Bellevue) takes.

Sternoff contends that Sound Transit's East Link extension and the City's road improvement plan are separate projects. In his view, R2013-21—which does not specifically mention widening 124th Avenue—does not confer authority to condemn property for the City's street widening project. He argues that either Sound Transit or the City had to make an explicit, separate finding of public use and necessity for the street widening project to support condemning his property for that purpose.

Sternoff submitted deposition testimony by Sound Transit staff and board members in which they agreed that the East Link extension and the City's road improvement plan are "separate" projects. He argues this demonstrates that R2013-21 does not apply to the street widening project. Deposition testimony characterizing the two projects as separate does not control our analysis of this issue. What is relevant is whether Sound Transit properly authorized the condemnation of property for the street widening project.

A government agency may exercise its power of eminent domain only if it first determines the public use and necessity requirements are met and a court later adjudicates public use and necessity. Miller, 156 Wn.2d at 410. Sternoff is correct that neither Sound Transit nor the City adopted a resolution of public use and necessity that specifically addresses the City's street widening project.

Thus, Sound Transit's petition to acquire property for improving 124th Avenue is supported only if the authority granted by R2013-21 extends to the City's project. We conclude that it does.

The property interests the petition seeks to acquire are tied to the East Link extension. R2013-21 authorizes Sound Transit to acquire "all, or any portion thereof, of the properties and property rights . . . for the purpose of constructing, owning, and operating a permanent location of the East Link Extension and light rail guideway." This language confers broad authority to condemn properties identified in the resolution when, in the agency's judgment, doing so is necessary to facilitate the East Link project.

The 2015 Memorandum of Understanding demonstrates that Sound Transit made a judgment that acquiring property for the street widening project would facilitate the East Link project. The memorandum states, "the City and Sound Transit desire to coordinate and share the costs for the design, right-of-way acquisition and construction" of the East Link and street widening projects to "improve efficiencies and reduce costs."

Sternoff argues that the court's finding of public use and necessity regarding his property is invalid because Sound Transit adopted the resolution in 2013 and only later identified a plan to coordinate the East Link with the City's street widening project, as specified in the 2015 memorandum. A condemning authority must have a general outline of intended improvements so that a court can know what particular part of the property is necessary for the stated public use. Port of Everett v. Everett Improvement Co., 124 Wash. 486, 492-94, 214 P.

13

1064 (1923). There is no requirement that an agency must "have in place a definitive use plan for the entire life of the property." Monorail, 155 Wn.2d at 638 n.21.

This court recently upheld an order of public use and necessity in a different condemnation action involving the East Link and road improvement plans of the City. Pine Forest, 185 Wn. App. at 269. Condemnation of property for the City's road improvement project and for East Link construction was authorized by a resolution of the Bellevue City Council. Pine Forest, 185 Wn. App. at 250. The ordinance authorizing condemnation specifically referred both to the road project and to the East Link in finding necessity for the acquisition. Pine Forest does not hold that an ordinance *must* identify a particular project for that project to be covered by the grant of authority to condemn. Sound Transit made a finding that acquisition of Sternoff's property was necessary for construction and location of the East Link. This finding suffices to support the order authorizing condemnation of property interests that will be conveyed to the City to facilitate widening a road that approaches and crosses the East Link trackway.

Because Sternoff has not proved arbitrary and capricious conduct, Sound Transit's finding is conclusive. The trial court properly issued an order on public use and necessity which includes property interests for the City's road improvement project.

Sternoff requests an award of attorney fees pursuant to RCW 8.25.075(1). Because we deny Sternoff's request for relief, we deny his request for fees.

14

The city of Seattle intervened in this action because it owns interests in Sternoff's property—two easements for the construction, operation, and maintenance of an electrical transmission system.  At Seattle's request, we confirm that our disposition of this appeal does not affect Seattle's property interests.

Affirmed.

WE CONCUR: